In re OLYMPIC FOUNDRY COMPANY, a Washington corporation, Debtor.

Donald L. GINSBERG, Trustee, Plaintiff,

v.

ELKEM METALS CO., Defendant.

Bankruptcy No. 83–03853.
Adv. No. A84–0540.

United States Bankruptcy Court, W.D. Washington.

July 25, 1985.

Richard R. Beresford, Seattle, Wash., for trustee.

Larry B. Feinstein, Seattle, Wash., for defendant.

## MEMORANDUM DECISION

SIDNEY C. VOLINN, Bankruptcy Judge.

■ The trustee has sued to recover preferential payments under 11 U.S.C. § 547. In order for the trustee to prevail he has the burden of proving the elements set forth in § 547(b). If these are established there are, nevertheless, various defenses, set forth in § 547(c), by which the creditor may avoid liability.

The trustee has met his burden of proof as to the five elements of § 547(b), to-wit:

(1) a transfer to or for benefit of the creditor

(2) on account of antecedent debt

(3) while debtor was insolvent

(4) made within 90 days before filing petition (The checks in question were sent September 28, October 19, October 26, 1983. The petition was filed December 15, 1983.

(5) The remittances enabled creditor to receive more than it would have in Chapter 7.

However, there are defenses to preference claims provided for by the statute, two of which are applicable:

§ 547(c)(1) which requires a showing that the debtor made a transfer in contemporaneous exchange for new value;

§ 547(c)(4) the subsequent advance rule which requires that new value be given after the transfer from debtor to creditor.

Defendant Elkem also raised the issue of insolvency based on a financial statement which showed debtor was not insolvent. The trustee presented testimony and evidence that the statement was not correct and that debtor was insolvent when the checks were issued. The trustee also presented figures showing that Elkem received more than would have been available in a Chapter 7 distribution.

Elkem further contends that 28 U.S.C. § 157 creates a constitutional issue because a bankruptcy judge, not being an Article

III judge, cannot rule on a preference claim.

### I. The Preference Defense

#### A.

Defendant raises two defenses to the preference claim. First, it raises § 547(c)(1) which is the contemporaneous exchange for new value rule. The Ninth Circuit has held that the "critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange." *Wadsworth Building Components*, 711 F.2d 122, 125 (9th Cir.1983). The court there stated that "the debtor was required to pay *past* debts before it would receive further credit. Value was given only for a future promise to pay. The check, therefore, is not exempted from treatment as a preference by § (c)(1)." (emphasis in original).

■ Here, the debtor called for further supplies. Elkem was wary and conditioned shipment on payment of past-due bills. Thereafter, three checks were sent in the specific amounts due on past invoices, not the amount of the goods shipped. Elkem applied the remittances to the past due accounts, albeit it would not have shipped but for the promise to pay. Thus, as in *Wadsworth*, the debtor paid past due accounts and value was given by Elkem for a promise to make a future payment. The Ninth Circuit *could* have decided differently as indicated by the dissent which reasoned that the payment of past debts together with the assurance of future payment was the consideration for the new shipment. However, the majority concluded otherwise.

*Wadsworth* is supported by two other cited cases. *Chemical Separations*, 38 B.R. 890 (E.D.Tenn.1984) which cites *Wadsworth* and holds that sending new supplies in exchange for an agreement to apply money to old accounts is not a contemporaneous exchange. The intent of the parties at the outset of the transaction controls. In this case the debtor had agreed to pay double the amount to be shipped but the payments were to be applied to the past due amounts first.

*Philadelphia Light Supply*, 33 B.R. 734 (E.D.Penn.1983) involved a $70,000 shipment to be paid in 90 days. The court stated that a credit transaction cannot be contemporaneous, citing several other decisions to this effect. This case cites the trial court in *Wadsworth*, 10 B.R. 662 (B.Idaho 1981) which was upheld as to the immediate issue by the Ninth Circuit in *Wadsworth* which commented that the finding as to intent of the parties was not clearly erroneous.

Consequently, the trustee prevails in this aspect since the funds paid were all applied to past due accounts and the new shipments were sent on credit which means they cannot have been contemporaneous exchanges for new value.

#### B.

■ Defendant's second defense is § 547(c)(4), the subsequent advance rule, which is applicable where new value is given after the transfer from the debtor to the creditor occurs. The pivotal issue is to determine when the transfer from the debtor to the creditor occurs. The trustee contends that transfer occurs when the check is received by the creditor. Elkem contends that it occurs when the check is mailed. The trustee prevails under the weight of authority, particularly in the Ninth Circuit. See *Wadsworth, supra,* and *In re Gold Coast Seed Co.,* 30 B.R. 551 (Bkrtcy.App. CA9, 1983).

There are two dates which are of concern in fixing the transfer time. One date involves whether the transfer occurred within the 90-day preference period. The other date, as here, involves determination of the transfer time for § 547(c)(4) purposes. *Gold Coast Seed* states that the two need not be the same and holds that for § 547(c)(4) purposes the transfer occurs when the check is received by creditor, not when the check is mailed. *Gold Coast* is cited in *Leathers v. Prime Leather Finishes*, 40 B.R. 248, 251 (D.Maine 1984) which states:

.... Subsection 547(c)(4) was intended to encourage creditors to do business with troubled businesses. Dating a transfer from the date a check is received by the creditor best implements this purpose for it does not penalize a creditor who advances new value (thus keeping the debtor's business viable) in reliance on payment of a prior debt by check. *In re Gold Coast Seed,* 30 B.R. at 553; see also *T.W. Garland, Inc.,* 19 B.R. [920] at 928 [ (Bkrcty.E.D.Mo. 1982) ].

### C.

■ The foregoing principles bring about the following result:

*Check No. 1* was received by Elkem October 3, 1983. $3,171.74 in goods were sent before that time and therefore new value was not given after the transfer. The goods having been sent before transfer, Check No. 1 for $2,374 is recoverable as a preference by the trustee.

*Check No. 2* was received by Elkem October 21, 1983. The $2,243.86 shipment of October 26, 1983 was new value sent after receipt of the check. Therefore the trustee may recover as a preference only the difference of the amount of check No. 2 and the value of the second shipment. That is: $2,354.23 minus $2,243.86 = $110.37. (This is the same method of computation used by the Court in *Gold Coast Seed, supra.*)

*Check No. 3* was received by Elkem November 2, 1983. No shipments were sent after that date which could be regarded as new value. The trustee may recover the $2,771.28 as a preference.

The trustee therefore recovers:

Check 1 . . . . . $2,374.00
Check 2 . . . . . $ 110.37
Check 3 . . . . . $2,771.28
Total . . . . . . . $5,255.65.

### II. The Issue of Insolvency

■ Elkem contends that because there was a financial statement showing solvency which was reflected in the debtor's schedules and statement of affairs, the debtor is precluded from showing insolvency at the time of the transfers in question. It is further contended that this is particularly so because the debtor initially filed a Chapter 11 proceeding and thereby caused the going concern value of the business to become a criterion. In support of its position, Elkem cites a recent decision by the Eleventh Circuit Court of Appeals, *In re Roemelmeyer v. Walter E. Heller Co.,* 752 F.2d 1529, 1532 (11th Cir.1985). The court there stated:

The *only* evidence before this court showing what the monetary value of the accounts receivable and inventory was on January 1, 1981 is the value as shown on the computerized accounting reports. . . . We have before us absolutely no evidence indicating that the accounting records were inaccurate or untrustworthy. The co-trustees did not challenge the accuracy of those records in the bankruptcy court.

The basic issue in *Roemelmeyer* was an evidentiary one, the court having held that there was a failure of proof. In this case, the trustee presented substantial evidence in the form of accounting records and through the testimony of executive personnel of the debtor establishing that the debtor was insolvent on the dates in question. The trustee has presented affirmative evidence, which this court finds credible, establishing insolvency.

### III. The Constitutional Issue

■ Elkem contends that the bankruptcy court does not have constitutional authority to exercise the jurisdiction conferred on it by 28 U.S.C. § 157(b)(2)(F) which empowers bankruptcy courts "... to determine, avoid, or recover preferences." The basis for this contention is that the grant of such jurisdiction to a non Article III court is unconstitutional as provided in *Northern Pipeline Construction v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In support of this posi-

**432**

tion, Elkem cites *In re Associated Grocers of Nebraska Cooperative, Inc.*, 46 B.R. 173 (Bkrtcy.D.Neb.1985).

The foregoing question, no doubt, will ultimately be ruled on by the United States Supreme Court. The Supreme Court in *Thomas v. Union Carbide Agric. Products Co.*, —— U.S. ——, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 stated:

> The Court's most recent pronouncement on the meaning of Article III is *Northern Pipeline.* A divided Court was unable to agree on the precise scope and nature of Article III's limitations. The Court's holding in that case establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a *traditional contract action arising under state law,* without consent of the litigants, and subject only to ordinary appellate review. 458 U.S., at 84 [102 S.Ct. at 2878] (plurality opinion); id., at 90–92 [102 S.Ct. at 2881–2882] (BURGER, C.J., dissenting). (emph. supp.)

A preference action provided for by a federal bankruptcy statute would not appear to be a traditional action arising under state law.

It may be pointed out that § 157 is based on the Emergency Rule which had been promulgated by the courts during the emergency period which ensued after *Marathon.* That rule has been held constitutional by every court of appeals which has considered it. The most recent cases are *In re Lafayette Radio Electronics Corp.*, 761 F.2d 84 (2d Cir.1985) and *In re Thomas,* 765 F.2d 926 (9th Cir.1985). This issue in a preference context was considered by *In re Northwest Cinema Corporation,* 49 B.R. 479, 13 BCD 44 (Bkrtcy.D.Mn.) which held § 157, as it relates to a preference suit, to be constitutional. That case contains an excellent discussion of the cases and authorities involving this issue. It presents a reasoned analysis and position which this court believes to be appropriate.