**In re PAULA SAKER & CO., INC., Debtor.**

**Harold YOUNG, as Trustee in Bankruptcy of Paula Saker & Co., Inc., Debtor, Plaintiff,**

v.

**PETER J. SAKER, INC., Allied Design Corp., Defendants.**

**Harold YOUNG, as Trustee in Bankruptcy of Paula Saker & Co., Inc., Debtor, Plaintiff,**

v.

**ALLIED DESIGN CORP., American Packaging Corp., Duo Textiles, Inc., Harry Kantrowitz Co., Harry M. Gibson, Jr., Majestic Shapes, Inc., Scotto's Service Station, Inc., S.L. Sommers Co., Inc., Stillwater, Inc., Michael Varinsky and Westwood, Inc., Defendants.**

Bankruptcy No. 80 B 10175.
Adv. Nos. 83–5870A, 83–5871A.

United States Bankruptcy Court,
S.D. New York.

Sept. 18, 1985.

Burwell Hansen, Manley & Peters by Martin F. McMahon, Washington, D.C., for defendants Peter J. Saker, Inc., Allied Design Corp., American Packaging Corp., Duo Textiles, Inc., Majestic Shapes, Inc., Scotto's

Service Station, Inc., S.L. Sommers Co., Inc. and Westwood, Inc.

Horvath & Young by Harold Young, New York City, for plaintiff.

DECISION AND ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

The trustee in bankruptcy for debtor, Paula Saker & Co., Inc. ("Saker") commenced these adversary proceedings to recover, pursuant to 11 U.S.C. § 547 (1978) (the "Bankruptcy Code"), allegedly preferential transfers made to defendants Peter J. Saker, Inc., Allied Design Corp., American Packaging Corp., Duo Textiles, Inc., Majestic Shapes, Inc., Scotto's Service Station, Inc., S.L. Sommers Co., Inc., and Westwood, Inc. Defendants deny the avoidability of the transfers and move for summary judgment.

As shown by the papers submitted on the motion, the debtor filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code on February 7, 1980, and on August 7, 1981 converted the case to Chapter 7 of the Code. Pursuant to 11 U.S.C. § 547(b), the trustee seeks to avoid certain allegedly preferential transfers from the debtor to the defendants. The following transactions are challenged:

(1) The debtor transferred to Peter J. Saker, Inc. $29,000.00 on March 12, 1979, $27,000.00 on March 20, 1979, $1,500.00 on April 4, 1979, and $1,500.00 on August 1, 1979. These transfers total $59,000.00. During the same period, the debtor received from Peter J. Saker, Inc. $29,000.00 on March 8, 1979, $12,500.00 on March 16, 1979, $16,000.00 on March 19, 1979 and $1,500.00 on July 31, 1979. These transfers also total $59,-000.00. Furthermore, the debtor, as lessee, remains indebted to Peter J. Saker, Inc. as landlord for rent from September 1, 1979 to February 1, 1980 at a rate of $8,350.00 per month, or $49,500.00 *in toto.*

(2) From April 4, 1979 to November 29, 1979 Allied Design Corp. ("Allied") received from the debtor: $15,000.00 on April 10, $10,000.00 on May 18, $7,000.00 on May 23, $12,000.00 on May 21, $7,000.00 on May 23, $12,-000.00 on May 31, $7,500 on June 7, $4,500.00 on July 19, $12,500.00 on July 23, and $13,000.00 on November 29. These transfers total $81,500.00. Allied's attorney asserts, however, that during the same period the debtor received the following funds from Allied: $15,000.00 on April 7, $10,-000.00 on May 17, $7,000.00 on May 22, $12,000.00 on May 30, $20,000.00 on June 5, $4,500.00 on July 18, $5,000.00 on November 27, and $8,000.00 on November 29. These transfers also total $81,500.00. The trustee does not dispute, in his Local Rule 3(g) statement, that these advances were made on the dates indicated. In his brief, he seems to assume (*e.g.* Br. p. 6) that at least one was made. In addition, Allied alleges that the debtor owes it $12,768.00 for use of its vehicles, drivers and fuel from July 23, 1979 to February 7, 1980. This alleged debt is disputed by the trustee. There is no formal rental agreement or accounts payable record evidencing the alleged debt. Other than a schedule apparently prepared by defendants' attorney, all that is proferred is an affidavit indicating that the debtor utilized these services from time to time.

(3) The debtor transferred to American Packaging Corp. ("American") $1,000.00 on November 16, 1979 and $1,000.00 on November 23, 1979. American alleges that it transferred to the debtor packing boxes and pallets worth $5,027.39 in January 1980. No evidence or affidavit by someone with personal knowledge is tendered in support of this allegation. The debtor's books reflect that upon making the payment on November 23, 1979, the sum of $5,027.39 remained owing to American. This balance

was reduced to zero by a debit in that amount on January 28, 1980. No transaction reflecting that reduction is revealed.

(4) The debtor transferred to Scotto's Service Station Inc. ("Scotto") $1,463.86 on December 20, 1979, $1,000.00 on January 21, 1980, and $1,000.00 on January 31, 1980. Scotto alleges that subsequent to each of these transfers from the debtor it advanced fuel, repair work and other services to the debtor. In support, it produced an invoice dated February 15, 1980, which states "Gen. Jan.— 2/15 794.91", and "Repairs 137.64," which were not included on its invoice of January 5, 1980. From the debtor's books it appears that Scotto billed the debtor on a monthly basis and that credit of $932.55 was advanced after December 20, 1979. Whether the December charges of $651.97 were incurred after that date is not revealed. The January invoice indicates only that they were incurred in December.

(5) The debtor received fabric lining from Duo Textiles, Inc. ("Duo") for which invoices dated October 18, 25, and 26, 1979 indicate a total of $4,355.00 was owed. The debtor transferred $1,000.00 to Duo on November 21, 1979. Duo alleges that it transferred additional fabric lining to the debtor after November 21, 1979, for which it has not been paid. No evidence is offered in support and the alleged transfer is not reflected on the debtor's books.

(6) The debtor transferred to Majestic Shapes, Inc. ("Majestic") $1,000.00 on November 9, 1979 and $1,000.00 on November 16, 1979. Majestic alleges that subsequent to these transfers from the debtor, it transferred shoulder padding to the debtor for which it has not been paid. There is no record or affidavit supporting the allegation.

(7) The debtor transferred to S.L. Sommers, Inc. ("Sommers") $3,000.00 on November 8, 1979. Sommers alleges that subsequent to the November 8, 1979 transfer, it transferred to the debtor trimmings and bindings for which it has not been paid. There is no evidence supporting the allegation and the transfer of trimmings and bindings is not reflected in the debtor's books.

(8) The debtor transferred to Westwood, Inc. ("Westwood") $1,000.00 on November 9, 1979. Westwood alleges that subsequent to the November 9, 1979 transfer, it transferred to the debtor woolens for which it has not been paid. There is no evidence supporting the allegation and the debtor's books do not reflect the transfer of woolens.

The test of Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule of Bankruptcy Procedure 7056, is whether the facts available show that there is no genuine issue of material fact to be tried. *Burtnieks v. City of New York*, 716 F.2d 982, 985 (2d Cir.1983); *Varon v. Trimble, Marshall & Goldman (In re Euro-Swiss International Corp.)*, 33 B.R. 872, 878, 11 B.C.D. 113 (Bankr.S.D.N.Y.1983). The moving party has the burden of proving the absence of genuine issues of fact; the opposing party must come forward to rebut by showing that "... a reasonable inference can be drawn that the issue would be submitted to the trier of facts." *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount, Inc.*, 388 F.2d 272, 278 (2d Cir.1967); *Varon*, 33 B.R. at 878.

■ In these preference actions, the defendants assert that even were the transfers to them to fall under § 547(b) of the Bankruptcy Code, they also fall within one of the exceptions provided by § 547(c). With respect to the assertions by American, Duo, Majestic, Somers and Westwood, there remain outstanding issues of material fact regarding the applicability of various § 547(c) exceptions to avoidability. As to § 547(c)(4), the subsequent advance excep-

tion, each of these defendants alleges that it transferred various goods and/or services for which it had not been paid subsequent to receiving an allegedly preferential transfer from the debtor. None of these defendants, however, has substantiated its allegations. With respect to § 547(c)(2), the ordinary course of business exception, there is no evidence reflecting the ordinary course of business between the debtor and each of these defendants. There is a similar lack of evidence pertaining to the debtor's relationship with Scotto, Peter J. Saker, Inc. and Allied.

■ The undisputed facts nevertheless permit analysis, pursuant to § 547(c)4, of certain of the transactions with Scotto and Peter J. Saker, Inc., as evidenced by the debtor's schedules, and the transactions with Allied that are not disputed by the Trustee. Such an analysis shows that some of the challenged transfers are clearly within the § 547(c)(4) subsequent advance exception to avoidability and that partial summary judgment should be granted.

Section 547(c)(4) provides that the trustee may not avoid transfers which are:

> [t]o or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

The legislative history pertaining to that section states that "if the creditor and the debtor have more than one exchange during the 90-day period, then the exchanges are netted out according to the formula in paragraph (4) [of § 547(c)]. Any new value that the creditor advances must be unsecured in order for it to qualify under this exception." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 374 (1977), *reprinted in* 1978 U.S.Code CONG. 7 AD.NEWS 5787, 6330. The Bankruptcy Commission Report makes it clear that "the advance to be

offset must be subsequent to the preference." REPORT OF THE COMM. ON THE BANKRUPTCY LAWS OF THE UNITED STATES, H.R.DOC. NO. 93–137, 93rd Cong., 1st Sess. 210–11 (1973).

The underlying policy of the so-called "subsequent advance rule" is to avoid penalizing creditors who, although aware of the debtor's insolvency, extend fresh credit subsequent to the preferential transfers. *Bernstein v. Alpha Associates, Inc.*, (*In re Frigitemp Corp.*), 34 B.R. 1000, 1010–11 (S.D.N.Y.1983), *aff'd*, 753 F.2d 230 (2d Cir. 1985). Judicial applications of the "subsequent advance rule" indicate as much. *See McClendon v. Cal-Wood Door*, 711 F.2d 122, 123 (9th Cir.1983) (new value must have been given after the transfer from the bankrupt to the creditor); *Leathers v. Prime Leather Finishes Co.*, 40 B.R. 248, 251 (Bankr.D.Me.1984) (assessment of how much property creditor restored to debtor before next preferential transfer was made); *Valley Candle Mfg. Co., Inc. v. Stonitsch*, 39 B.R. 645 (W.D.Mo.1984); *In re Keydata Corp.*, 37 B.R. 324, 328 (Bankr. D.Mass.1983) (new value must remain unpaid); *In re Rustia*, 20 B.R. 131, 135, 9 B.C.D. 6 (Bankr.S.D.N.Y.1982) (only preferential transfers made before the new value was given may be netted out against subsequent value).

Thus, the December 20, 1979 payment to Scotto of $1,463.86 is partially offset by the $932.55 credit given in January 1980. As to the $59,000.00 in transfers received by Peter J. Saker, Inc. from the debtor it is contended in response that all but $29,-000.00 of this amount was offset by subsequent transfers of funds during the same period and that the $29,000.00 not so offset was more than offset by subsequent credit given for the unpaid rent of $49,500.00. With respect to the monetary transactions this defendant is on firm ground.

After receiving $29,000.00 on March 12, 1979, Peter J. Saker, Inc. advanced to the debtor $12,500.00 on March 16, 1979 and $16,000.00 on March 19, 1979 offsetting all but $500.00 of the $29,000.00 received on March 12. The creditor received from the

debtor $27,000.00 on March 20, 1979 and $1,500.00 on April 4, 1979. The $1,500.00 payment received on April 4, 1979 was offset by a $1,500.00 advance from the creditor on July 21, 1979. On August 1, 1979 the debtor transferred to the creditor $1,500.00 which was not offset by a subsequent advance of funds from the creditor. Thus, of the $59,000.00 received by the creditor from the debtor a total of $30,000.00 was offset by subsequent advances in the form of funds transferred. This amount falls within the § 547(c)(4) exception to avoidability.

■ Apparently recognizing the inevitability of these conclusions, the trustee attempts to take comfort from § 547(c)(4)(B). Pursuant to that section, a subsequent transfer of new value qualifies only if

> on account of which new value the debtor did not make an unavoidable transfer to or for the benefit of such creditor;

From this language, some courts have reached the conclusion that the subsequent advance exception requires that the advance remain unpaid. *Keydata*, 37 B.R. at 328; *Rovzar v. Prime Leather Finishes Co. (In re Saco Local Development Corp.)*, 30 B.R. 859, 861, 10 B.C.D. 962 (Bankr.D. Me.1983); *In re Bishop*, 17 B.R. 180, 8 B.C.D. 852, 5 C.B.C.2d 1515 (Bankr.N.D.Ga. 1982). But all that this court has required is that "each transfer must be examined independently to determine whether or not the creditor has replenished the estate." *Rustia*, 20 B.R. at 135. In view of the statutory language, the district court for the Western District of Missouri has accordingly rejected any requirement that the advance of new value remain unpaid, finding nothing in § 547(c)(4) to warrant such a result. *Matter of Isis Foods, Inc.*, 39 B.R. 645, 653 (W.D.Mo.1984).

A literal reading of the tortured language of § 547(c)(4)(B) reflects a concern for replenishment. Conditioning the exception on the absence of an unavoidable transfer in connection with the acquisition of new value indicates that the exception would apply if the debtor had made an avoidable transfer for the estate would be replenished upon its avoidance.

Interpreting the language to require that the advance would not be repaid would, moreover, sharply limit the exemption to one subsequent advance when there is no indication that Congress so desired. Indeed, the legislative history contemplates its application to "more than one exchange during the ninety day period ..." H.R. Rep. No. 95–595, 95th Cong. 1st Sess. 373 (1977); Sen. Rept. No. 95–989, 95th Cong., 2d Sess. 88 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5874, 6329. Netting each subsequent advance against prior transfers, as has been done here, accords with § 547(c)(4).

The remaining $29,000.00 in payments to Peter J. Saker, Inc., not compensated for by subsequent advances in the form of funds, consists of the $500.00 of the March 12, 1979 payment not offset by the subsequent advance of $12,500.00 on March 16, 1979 and $16,000.00 on March 19, 1979, the $27,000.00 payment received by the creditor on March 20, 1979, and the $1,500.00 payment received by the creditor on August 1, 1979. Peter J. Saker, Inc. contends that this total of $29,000.00 falls within § 547(c)(4) exception because of subsequent credit of $49,500.00 given the debtor for rent owed during the September 2, 1979 to February 1, 1980 period.

■ Credit given for unpaid rent constitutes an advance. *Thomas W. Garland, Inc. v. Nooney Co. (In re Thomas W. Garland, Inc.)*, 28 B.R. 87, 89 (Bankr.E.D.Mo. 1983). In agreement with that proposition, the trustee alleges that material issues of fact exist because (i) the lease exhibit names the debtor, as "Paula Saker & Company" and not "Paula Saker & Co., Inc.," and the debtor, in its schedule of executory contracts, referred to a lease with Peter J. Saker, individually, and Josephine Saker as landlord, and not with Peter J. Saker, Inc., and (ii) an excerpt from the books and records of Peter J. Saker, Inc. relied on by that defendant raises more questions than it answers in that it has a column for receivables due from that company. The

first of these allegations might, we suspect, be explained by testimony. The second does raise a material issue of fact. In any event, summary judgment on that score is thus improper.

Similarly, Allied, after receiving $15,000 on April 7, 1979, advanced $15,000 to the debtor on April 10. Thereafter, transfers totalling $53,500 through July 18, 1979 were also covered by subsequent advances corresponding to the transfers. The transfer of $5,000 on November 27, 1979 was covered by an advance of $13,000 on November 29. Since the Trustee appears to agree that these advances were made when indicated and yet it is unclear whether the advance of November 29, 1979 was subsequent to a $13,000 transfer on the same day, it appears that § 547(c)4 applies except to the extent of the $8,000 transfer on November 29, 1979. As to that sum, there remains a question of material fact.

Apparently recognizing the existence of such an issue Allied alleges subsequent advances to the debtor in the form of the use of trucks, drivers and fuel. These, however, are not sufficiently supported to permit judgment. The affidavited assertion that the debtor used Allied's trucks at least twice a week after its own were repossessed, that Allied supplied gas and a driver, and that Allied charged others a "typical use fee" simply does not show that Allied charged the debtor for these goods and services, indicates that their provision may have been extraordinary and is insufficient to establish their value or Allied's course of dealings with the debtor. *See* § 547(c)(2). Finally, there is no evidence to show that the transfers from the debtor to Allied were intended by the parties to be "a contemporaneous exchange for new value given to the debtor." *See* § 547(c)(1).

In conclusion, subsequent monetary advances from Peter J. Saker, Inc. and Allied bring some of the challenged transfers from the debtor to those entities within the § 547(c)(4) subsequent advance exception to avoidability, and thus the trustee may not avoid them. Similarly deemed established pursuant to Rule 56(d) of the Federal Rules of Civil Procedure is that the December 20, 1979 payment to Scotto may not be avoided to the extent of $932.55 credit subsequently received. issues of fact exist regarding credit for rent and with respect to the exceptions claimed by Allied, American, Duo, Majestic, Sommers, and Westwood, and in part to the exceptions asserted by Scotto, Peter J. Saker, Inc. and Allied, thus precluding summary judgment.

IT IS SO ORDERED.