In re ALMARC
MANUFACTURING, INC., Debtor.

Bernard C. CHAITMAN, Trustee of Almarc Manufacturing, Inc., Plaintiff,

v.

PAISANO AUTOMOTIVE LIQUIDS, INC., Defendant.

Bankruptcy Nos. 83 B 2639, 85 A 232.

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 24, 1986.

Arthur Raphael, Teller, Levit & Silvertrust, P.C. Chicago, Ill., for trustee.

Raymond E. Stachnik, Abramson & Fox, Chicago, Ill., for Paisano.

## MEMORANDUM AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

The trustee has filed a complaint seeking to recover a preferential payment to Paisano Automotive Liquids, Inc. under 11 U.S.C. § 547(b). The parties have presented the case to the Court on stipulated facts. The sole issue in dispute is whether Paisano may set off the amount of an alleged subsequent advance to the debtor against the amounts it has received in an otherwise preferential transfer under 11 U.S.C. § 547(c)(4).[1]

---

1. The Court, in a previous Memorandum and Order in this case dated April 28, 1986, 60 B.R. 584, found that the trustee had satisfied all the elements of § 547(b) except the debtor's insolvency at the time of the transfer in question. That decision was based on the fact that both an accountant's financial statement and the parties' stipulation of facts left unresolved the issue of the debtor's pre-bankruptcy solvency. However, another document submitted by Paisano appeared to concede the debtor's insolvency. Because of these inconsistencies, the Court entertained the trustee's post-judgment motion to clarify the question of whether there was in fact a dispute on the issue of insolvency. The Court subsequently amended the Memorandum and

On September 21, 1982, Paisano shipped certain automotive goods to the debtor for use in the debtor's business. On November 23, 1982, the debtor mailed a $63,342.30 check to Paisano to pay for those goods. Paisano received the check on November 24, 1982 and deposited it in its bank account on November 30, 1982. The check cleared the debtor's bank account on December 1, 1982. On November 29, 1982, Paisano shipped additional goods to the debtor for use in its business. The amount of this second shipment was $61,427.00. The parties agree that under established company policy Paisano would not have sent this second shipment had it not received the check in payment for the first shipment. The debtor never paid for the second shipment. On February 28, 1983, the debtor filed a Chapter 11 petition.

Paisano concedes that the check it received for the first shipment satisfies all of the elements of a preferential payment under § 547(b). However, it contends that the trustee may not avoid that transfer by virtue of § 547(c)(4). Section 547(c)(4) provides:

> (c) The trustee may not avoid under this section a transfer
>
> \*    \*    \*    \*    \*    \*
>
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise

unavoidable transfer to or for the benefit of such creditor;

11 U.S.C. § 547(c)(4). Thus, Paisano claims that the trustee can recover the preferential payment only to the extent that it exceeds the subsequent new value received by the debtor in the form of the second shipment of goods.[2]

For a preferential transfer to be saved from avoidance under § 547(c)(4) a very clearcut order of events must have taken place. First, the creditor must have received a transfer which is otherwise voidable as a preference under § 547(b). Second, *after* receiving the preferential transfer, the preferred creditor must advance additional credit to the debtor on an unsecured basis. Third, that additional post-preference unsecured credit must be unpaid in whole or in part as of the date of the petition. *See In re American International Airways, Inc.*, 56 B.R. 551, 554 (Bankr.E.D.Pa.1986) and cases cited therein; *but see In re Paula Saker & Co., Inc.*, 53 B.R. 630, 634 (Bankr.S.D.N.Y.1985). If these three elements are satisfied, the preferred creditor may set off the amount of the post-preference unsecured credit which remains unpaid as of the date of the petition against the amount which the creditor is required to return to the trustee on account of the preferential transfer it received. Thus, if Paisano can get within the elements of § 547(c)(4), it can set off the $61,427.00 it advanced the debtor on November 29, 1982 against the $63,342.30 it received from the debtor in an admittedly preferential transfer, and it will only be

---

Order on June 6, 1986, to reflect the adversary proceeding's status regarding the issue of insolvency. Because Paisano has stated that its current position is to admit the debtor's insolvency 90 days prior to filing bankruptcy, the trustee has proved all § 547(b) elements of a preference and the Court may proceed to consider whether § 547(c)(4) applies.

**2.** Paisano initially also alleged that the trustee could not recover the preference by virtue of 11 U.S.C. §§ 547(c)(1) and (2). Section 547(c)(1) prohibits the trustee from avoiding a transfer that was intended by both the debtor and the transferee as a contemporaneous exchange for new value and that was in fact a substantially

contemporaneous exchange. Paisano withdrew this defense based on its discovery and the parties' stipulation of facts. Section 547(c)(2), as it existed prior to the effective date of the Bankruptcy Amendments and Federal Judgeship Act of 1984, which version applies to this case, Pub.L. 98–353, § 553, prevented the trustee from avoiding a transfer made within 45 days of the time the debt was incurred where the debt was incurred in the ordinary course of both the debtor's and creditor's business or financial affairs and in accordance with normal business terms. After discovery Paisano withdrew this defense as well.

required to return $1,915.30 to the trustee.[3] If Paisano cannot get within § 547(c)(4), it will have to return the full $63,342.30 to the trustee and be stuck with a $61,427.00 unsecured claim against the estate.[4]

There is no doubt that Paisano received a $63,342.30 preferential transfer. Nor is there any doubt that Paisano was owed $61,427.00 from the debtor as of the date of the petition. The only question under § 547(c)(4) is whether Paisano gave such new value to the debtor *after* it received the preferential payment. The trustee claims that Paisano received the preference on December 1, 1982 when the drawee bank honored the debtor's check for the first shipment. Thus, as the trustee sees it, because Paisano shipped the additional goods on November 29, 1982, this new value was given two days *before* the preference occurred, and § 547(c)(4) does not apply. Paisano, on the other hand, claims that the preference occurred on November 24, 1982 when it received the debtor's check for the first shipment. Therefore, according to Paisano, the new value was given five days *after* the preferential transfer and § 547(c)(4) does apply.

■ Paisano's problems are compounded by the fact that it is clear that § 547(c)(4) does not codify the "net result" rule. *In re Fulghum Construction Co.*, 706 F.2d 171, 173–74 (6th Cir.1983); *Leathers v. Prime Leather Finishes Co.*, 40 B.R. 248, 250 (D.Ct.D.Me.1984); *In re Garland*, 19 B.R. 920, 926 (Bankr.E.D.Mo.1982). In other words, in applying § 547(c)(4), the court does not take all preferential transfers received by a creditor during the 90 day (or one year) period and reduce it by all unpaid unsecured advances which the creditor gave the debtor during that same period to see what if anything the creditor must return to the trustee. *Leathers v. Prime Leather Finishes Co.*, 40 B.R. 248, 250

(D.Ct.D.Me.1984); *In re American International Airways, Inc.*, 56 B.R. 551, 553 (Bankr.E.D.Pa.1986). Were the net result rule to apply, Paisano would succeed on any theory. However, § 547(c)(4) requires a strict order of first a preference, then subsequent thereto an advance of unsecured credit. There is no doubt when Paisano extended unsecured credit to the debtor (on November 29), the date the additional goods were shipped. Thus, the key question here is when did the preferential transfer take place for § 547(c)(4) purposes. Was it November 24 when Paisano received the debtor's check or December 1 when the debtor's bank honored the check?

This Court previously has been presented with the question of when a transfer occurs for § 547(b) purposes in another preference proceeding in this very same Chapter 11 case. In *Matter of Almarc Mfg., Inc. (Chaitman v. Chicago Boiler Co.)*, 52 B.R. 582 (Bankr.N.D.Ill.1985), this Court held that for § 547(b) purposes a transfer occurs when the drawee bank honors the check. The trustee now asks the Court to extend this holding to § 547(c)(4). However, §§ 547(b) and 547(c)(4) have entirely different purposes. Section 547(b) is designed to allow the debtor or trustee to avoid transactions that favor creditors. *Matter of Fasano/Harriss Pie Co.*, 43 B.R. 871, 876 n. 2 (Bankr.W.D.Mich.1984). The key focus is the recovery of funds to the estate for equitable distribution among creditors of equal priority. The fact that the payee is not vested with any title to the funds until the check is honored by the drawee bank has prompted most courts to find that no transfer occurs under § 547(b) until the check is honored. *See Almarc*, 52 B.R. at 583 and cases cited therein.

■ Section 547(c)(4) was not enacted to ensure equitable treatment of creditors,

---

**3.** Of course, but for § 547(c)(4), Paisano could not set off the claim it has against the *debtor* against the amounts it must return to the *trustee* under the preference provision. The mutuality required by 11 U.S.C. § 553 clearly would be lacking. *See* 4 Collier on Bankruptcy, ¶ 553.09 (15th ed. 1985).

**4.** If Paisano returns the $63,342.30, it will also be able to file an unsecured claim for that amount. See 11 U.S.C. § 502(h).

but rather is intended to encourage creditors to deal with troubled businesses.[5] *Leathers v. Prime Leather Finishes Co.,* 40 B.R. 248, 251 (D.Me.1984); *Matter of Georgia Steel, Inc.,* 38 B.R. 829, 837 (Bankr.M.D.Ga.1984); *In re Gold Coast Seed Co.,* 30 B.R. 551, 553 (BAP–9 1983). The key focus under § 547(c)(4) is to treat fairly a creditor who has replenished the estate after having received a preference. *In re American International Airways, Inc.,* 56 B.R. 551, 553, (Bankr.E.D.Pa.1986); *In re Paula Saker & Co., Inc.,* 53 B.R. 630, 633 (Bankr.S.D.N.Y.1985). Thus, by way of example, suppose the debtor owes Creditor A $1,000 on an old unsecured debt. On day 1, the debtor pays Creditor A $1,000. On day 45, the debtor goes to Creditor A and says something like, "You were willing to lend me $1,000. I paid you back. How about lending me another $1,000?" Creditor A, figuring the debtor is good for at least $1,000, figures why not and lends the debtor a fresh $1,000 on an unsecured basis. The debtor puts the $1,000 in a desk drawer. On day 60 the debtor files Chapter 7. The trustee finds the $1,000 still in the desk drawer. The trustee brings a $1,000 preference action against Creditor A on account of the $1,000 payment made on day 1. Assume that all of the elements of § 547(b) can be proved with respect to that payment. If the trustee is allowed to recover that payment, it will be better off than it would have been had this series of transactions not taken place. It will now have $2,000 where on day 1 it only had $1,000.[6] Creditor A, on the other hand, will be out $2,000 where on day 1 it was only out $1,000. More importantly, at no time

had Creditor A shown any willingness to advance the debtor more than $1,000. To prevent such a result, § 547(c)(4) allows the bankruptcy court to give credit for the amount of the subsequent advance.[7]

▇ Holding that the transfer occurs upon receipt of the check for these purposes furthers the goal of § 547(c)(4) and leads to a more appropriate result in policy terms. In most cases, absent a post-dated check or a request to hold the check, parties in a normal business transaction would, as the parties did here, treat a check as a cash transaction and extend new credit immediately upon receiving a check in payment of a prior debt rather than waiting until the check has cleared to send new goods. *See In re Gold Coast Seed Co.,* 30 B.R. 551, 553 (BAP–9 1983). There is no policy reason why a creditor who waits for a check to clear before shipping should get the benefit of the § 547(c)(4) setoff while a creditor who, doing what most business people do, ships on receipt of a check, should be denied the setoff. In both cases, the check ultimately clears and the estate is diminished to that extent. More importantly in both situations the allowance of the setoff does not injure the estate because, as explained earlier, the estate is enriched to the extent of the goods shipped which is, of course, the exact amount set off. *See* 2 Norton, Bankruptcy Law and Practice, § 32.20 (1981).

If the policy underlying § 547(c)(4) is to encourage creditors to continue to extend unsecured credit to debtors in financial trouble and to thus reduce the number of

---

5. There is no meaningful legislative history to § 547(c)(4) regarding the issue of when a transfer by check occurs. *Matter of Fasano/Harriss Pie Co.,* 43 B.R. 871, 874 (Bankr.W.D.Mich. 1984). Because the statutory language likewise is silent on that point, the Court should consider policy considerations underlying § 547(c)(4). *Id.* at 876.

6. Of course if the debtor had repaid the second $1,000 advance before the petition, the logic of the analysis fails. In such a case, no credit should be allowed Creditor A under § 547(c)(4). *But see In re Paula Saker & Co., Inc.,* 53 B.R. 630, 634 (Bankr.S.D.N.Y.1985).

7. This analysis is oversimplified in several respects. First, there is no requirement that the trustee find the proceeds of the post-preference advance in the estate. In effect, § 547(c)(4) assumes the estate benefitted to the extent of the unpaid post-preferential transfer unsecured advance. Second, the creditor's state of mind in making the post-preferential advance is absolutely irrelevant to the right of setoff. *See In re Hygrade Envelope Corp.,* 393 F.2d 60 (2d Cir. 1968), *cert. den.* 393 U.S. 837, 89 S.Ct. 114, 21 L.Ed.2d 108 (1968).

bankruptcy filings by keeping marginal businesses afloat, the theory advanced by the trustee would frustrate rather than enhance this policy. If creditors had to wait for checks to clear before being able to safely ship new goods to debtors in apparent financial difficulty, they would be discouraged from dealing with such debtors. At a minimum, the debtor's normal business flow would be disrupted, with the natural deleterious results which would flow from that disruption ensuing, if suppliers waited for the debtor's checks to clear before shipping. The effect of the shipping delay caused by such a rule, for example, on businesses requiring perishables, such as restaurants or grocery stores, could be to push the debtors into bankruptcy rather than to keep them out.

This approach is not novel. A number of courts have ruled that a check is transferred for § 547(b) purposes on the date it is honored and for § 547(c)(4) purposes on the date it is received. *See Leathers v. Prime Leather Finishes Co.*, 40 B.R. 248, 251; (D.Ct.D.Me.1984); *In re Gold Coast Seed Co.*, 30 B.R. 551, 553 (BAP-9 1983); *In re Olympic Foundry Co.*, 51 B.R. 428, 430 (Bankr.W.D.Wash.1985); *Matter of Fasano/Harriss Pie Co.*, 43 B.R. 871, 876 (Bankr.W.D.Mich.1984); *Matter of Georgia Steel, Inc.*, 38 B.R. 829, 834 (Bankr.M.D. Ga.1984); *In re Philadelphia Light Supply Co.*, 33 B.R. 734, 739 (Bankr.E.D.Pa. 1983); *see also In re Thomas W. Garland, Inc.*, 19 B.R. 920, 928 (Bankr.E.D.Mo.1982); *but see In re Wadsworth Building Components, Inc.*, 711 F.2d 122, 123 (9th Cir. 1983) (applying 11 U.S.C. § 547(e)(2)); *In re Bellanca Aircraft Corp.*, 56 B.R. 339, 397–98 (Bankr.D.Minn.1985); *In re Blanton Smith Corp.*, 37 B.R. 303, 309 (Bankr.M.D. Tenn.1984) (applying 11 U.S.C. § 547(e)(1)). The *Philadelphia Light Supply* case is clearly analogous to the situation in the case at bar. In that case the creditor

agreed to ship additional goods to the debtor only after the debtor agreed to reduce its revolving account balance. Upon receipt of the debtor's check, the creditor sent the goods requested. The court in *Philadelphia Light Supply* noted that although it had ruled earlier that a transfer by check generally occurs upon honoring by the drawee bank, (*Philadelphia Light Supply*, 33 B.R. at 739, *citing In re Ardmore Sales Co., Inc.*, 22 B.R. 911, 913 (Bankr.E.D.Pa.1982)), the same logic does not hold true where a § 547(c)(4) defense is asserted. "Rather, when it is beyond question that a creditor extends new credit without security to a debtor on the basis of the debtor's representation that it would pay the creditor on an antecedent debt, we think § 547(c)(4) should be applied to protect the creditor." The court thus ruled that for § 547(c)(4), the transfer occurs upon receipt of the check. *Philadelphia Light Supply*, 33 B.R. at 739. This Court agrees.

█ In fact, the *Philadelphia Light Supply* logic can actually be carried one step further. It has long been recognized in bankruptcy law that a debtor who issues a check impliedly represents that it will be willing and able to honor that check on presentment. *In re Mullin*, 51 B.R. 377, 378 (Bankr.S.D.Ind.1985). Thus, rather than dealing with a debtor who was representing it would pay a creditor on an antecedant debt, a creditor who ships more goods on receipt of a check is doing so on the basis of a debtor who was making a representation that all required steps had already been taken to provide for payment of an antecedant debt. Such a creditor deserves the protection of § 547(c)(4). Therefore the Court holds that for § 547(c)(4) purposes a transfer takes place when the debtor delivers the check.[8]

---

8. This holding in no way alters this Court's previous decision that for § 547(b) purposes in a transaction involving payment by check the transfer occurs when the check is honored by the debtor's bank. *Matter of Almarc Mfg., Inc. (Chaitman v. Chicago Boiler Co.)*, 52 B.R. 582 (Bankr.N.D.Ill.1985). The Court does not need to address the question of when a transfer occurs for purposes of §§ 547(c)(1) and (2). *See supra* n. 2. For the various viewpoints on this issue, *compare Matter of Foreman Industries, Inc.*, 59 B.R. 145, 152 (Bankr.S.D.Ohio 1986) (transfer under §§ 547(c)(1) and (2) occurs upon honoring); *In re Hartwig Poultry, Inc.*, 57

Once it is determined that the transfer occurred in this case on November 24, 1982, when Paisano received the check, the rest of the analysis is simple. The preferential transfer in this case consisted of the check received by Paisano on November 24, 1982 in the amount of $63,342.30. The $61,427.00 shipment on November 29, 1982 was the new value sent after receipt of the check. The $61,427.00 remains unpaid. Thus, § 547(c)(4) applies, and the trustee may recover only the difference between the amount of the check and the value of the second shipment: $63,342.30 minus $61,427.00 = $1,915.30. *See In re Olympic Foundry Co.*, 51 B.R. 428, 431 (Bankr. W.D.Wash.1985).

B.R. 236, 239 (Bankr.N.D.Ohio 1986) (transfer under § 547(c)(2) occurs upon honoring); *In re Naudain, Inc.*, 32 B.R. 875, 878 (Bankr.E.D.Pa. 1983) (transfer under § 547(c)(2) occurs upon honoring); *Matter of Advance Glove Mfg. Co.*, 25 B.R. 521, 527 (Bankr.E.D.Mich.1982) (transfer under § 547(c)(2) occurs upon honoring) *with In re O'Neill*, 729 F.2d 35 (1st Cir.1984) (transfer under § 547(c)(2) occurs upon receipt); *Matter of Fasano/Harriss Pie Co.*, 43 B.R. 871, 876 (Bankr.W.D.Mich.1984) (transfer under §§ 547(c)(1) and (2) occurs upon receipt); *Matter of Georgia Steel, Inc.*, 38 B.R. 829, 834 (Bankr.M.D.Ga.1984) (transfer under §§ 547(c)(1) and (2) occur upon receipt).