In re BOB GRISSETT GOLF SHOPPES, INC., Debtor.

Gerald M. O'DONNELL, Trustee, Plaintiff,

v.

PROGROUP, INC., Defendant.

Bankruptcy No. 82–01428–A.
Adv. No. 85–0355–A.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Oct. 7, 1987.

Gerald M. O'Donnell, Alexandria, Va., trustee.

John W. Thyden, Springfield, Va., for plaintiff.

John M. Tran, Arlington, Va., for defendant.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

In this proceeding the Court must determine whether two admittedly preferential transfers may be partially excepted from avoidance under either section 547(c)(2) or section 547(c)(4). Additionally, the Court also must consider whether the plaintiff ("Trustee") should be allowed to amend his complaint to conform to the evidence, pursuant to Fed.R.Civ.P. 15(b), as made applicable to this proceeding by Bankruptcy Rule 7015.

On 8 August 1985, the Trustee of Bob Grissett Golf Shoppes, Inc. ("debtor) filed a Complaint to Avoid a Preferential Transfer against ProGroup, Inc. ("ProGroup"), alleging ProGroup had received two preferential payments totalling $14,909.92. ProGroup concedes these payments were preferential but asserts the benefit of two exceptions to avoidance. ProGroup maintains the transfers are excepted under section 547(c)(2), the "ordinary course of business" exception, or section 547(c)(4), the "subsequent value" or "new value" exception. A review of the chronology is appropriate.

The debtor filed a petition in bankruptcy on 5 November 1982. The case was subsequently converted to a Chapter 7. Prior to filing its petition, the debtor experienced declining financial conditions. Its relationship with ProGroup, a supplier of golf equipment, had likewise deteriorated. Initially, the debtor's payments for purchases on open account were made to ProGroup within 90 days of shipment. By the summer of 1982, however, the terms were modified after the debtor began to experience cash flow problems, which caused an accumulated arrearage in excess of $30,000.00. Therefore, as a condition of doing further business, ProGroup demanded the antecedent debt be liquidated, and also requested advance payment for all future purchases.

On or about 12 July 1983, well outside of the preference period, the debtor issued ProGroup three checks for $10,000.00 each. Upon receipt of these checks, ProGroup made additional shipments, the last occurring on 20 July 1982. Subsequently, all three checks were dishonored because of insufficient funds. ProGroup then suspended further shipments to the debtor pending resolution of the bad checks, demanding the arrearages be liquidated in full by three installments of $11,909.92 each. Sometime in early August, the debtor issued three post-dated checks to ProGroup in the agreed-upon amount, of which only one cleared for payment. At ProGroup's behest, the debtor replaced one of these bad checks with a series of five additional checks, each for $3,000.00. These five checks were apparently provided before ProGroup discovered the second $11,909.92 check had been dishonored, because the parties intended the five checks to replace the first dishonored check for $11,909.92, with the remaining $3,090.08 to be applied toward future purchases. Only one of the five replacement checks was paid. The payment history may be summarized as follows:

| Check No. | Amount | Delivery Date | Date of Check | Date of Payment/ Dishonor |
|---|---|---|---|---|
| *[1] | $10,000.00 | 7/12/82 | * | *dishonored |
| * | 10,000.00 | 7/12/82 | * | *dishonored |
| * | 10,000.00 | 7/12/82 | * | *dishonored |
| 1959 | 11,909.92(r)[2] | early Aug. | 8/9/82 | 8/19/82–dis. |
| 1992 | 11,909.92(r) | early Aug. | 8/23/82 | *dishonored |
| 1905 | 11,909.92(r) | early Aug. | 8/28/82 | 9/10/82–paid |
| 3206 | 3,000.00(r) | * | 9/3/82 | *dishonored |
| 3207 | 3,000.00(r) | * | 9/3/82 | 9/10/82–dis. |
| 3208 | 3,000.00(r) | * | 9/3/82 | 9/13/82–paid |
| 3209 | 3,000.00(r) | * | 9/3/82 | *dishonored |
| 3210 | 3,000.00 | * | 9/3/82 | *dishonored |

Thus, although debtor supplied numerous checks to ProGroup, only two are at issue here because only the 28 August check for $11,909.92 and the 3 September check for $3,000.00 were paid.

After the first three replacement checks were received but before any were honored, ProGroup shipped additional goods to the debtor. The transactions are summarized as follows:

| Invoice No. | Date of Shipment | Amount of Shipment |
|---|---|---|
| 18756 | 8/30/82 | $1350.00 |
| 18757 | 8/30/82 | 216.00 |
| 18757 | 8/30/82 | 216.00 |
| 18759 | 8/30/82 | 160.18 |
| 19221 | 8/30/82 | 1868.00 |
| 19222 | 8/30/82 | 1868.00 |
| 21998 | 9/15/82 | 290.86 |
| 25930 | 9/30/82 | 2274.58[3] |

These shipments form the basis of Pro-Group's asserted defense to this preference action.

The first issue for decision is an evidentiary question. At trial, the trustee introduced into evidence the two honored checks, No. 1905 for $11,909.92 and No. 3208 for $3,000.00. Additionally, at the close of his case, the trustee moved to amend his pleadings to conform to the evidence, pursuant to Fed.R.Civ.P. 15(b), as made applicable to this proceeding by Bankruptcy Rule 7015. Specifically, the trustee moved to raise the *ad damnum* clause of his complaint from $14,909.92 to $100,000.00. ProGroup strenuously objected to this motion.

Although the trustee has the burden of proving the elements of a preferential transfer under 11 U.S.C. § 547(b), further inquiry into the two transfers alleged in the complaint in unnecessary since ProGroup concedes the two payments totalling $14,909.92 were preferential. ProGroup denies, however, receiving any other transfers during the ninety days prepetition. To prevail upon his Rule 7015 motion, the trustee must produce evidence of other transfers to support his $100,000.00 figure.

The trustee relies on ProGroup's answer to plaintiff's interrogatory No. 3 to meet his burden of proof. Plaintiff's interrogatory No. 3 requests that ProGroup "list by date of receipt all payments received by you from the plaintiff, and what invoice or balance it was credited to for the period of July 3, 1982 to November 7, 1983." The answer lists 50 different dollar amounts, attributed to 8 different dates (July 20, 23, 27, August 17, 31, September 13, October 1 and November 10). No invoices are listed. The listed dollar amounts attributed to dates within the preference period total $101,215.13. The trustee claims this answer is an admission that ProGroup has

---

1. * indicates the information is not in evidence.

2. (r) follows those checks offered as replacements.

3. invoice 25930 is not for goods shipped, but a demand for payment of a credit erroneously granted in August.

received over $100,000.00 from the debtor during the preference period. ProGroup disputed this characterization of its answer.

Although the answer to Plaintiff's interrogatory No. 3 on cursory examination appears to show 50 separate payments, a careful review of this answer, the invoices and statements sent by ProGroup (Defense Exhibits A–W), and the witnesses' testimony clearly shows that the answer was not a list of individual payments actually received, but was a list of credits granted. Each check received was credited to multiple invoices. Debtor's president, Bob Grissett, testified that he did not send a check for each separate invoice. Additionally he admitted that many of the checks he did send were dishonored. ProGroup's credit manager, Willard Adcox, testified that the answer was a list of credits granted as well as checks received. The monthly statements from ProGroup support this testimony. The statements also show that debits incurred because of bad checks were charged back separately on each statement and then added to the amount due. Thus, many items that initially appear paid were actually credits granted when checks were received, but may have been ultimately dishonored. Consequently, the trustee's assertion is completely without foundation in that ProGroup's answer to Plaintiff's interrogatory No. 3 is not an admission that ProGroup actually received over $100,000 during the preference period.

The trustee has no evidence of preferential transfers beyond those checks ProGroup concedes to be preferential payments. Because we find the trustee has failed to carry his burden of proof, this Court need not resolve the trustee's motion to amend the pleadings.

We now consider the defenses raised to the transfers. Even though ProGroup concedes the two payments totalling $14,909.92 were preferential, it claims the transfers are excepted from avoidance under either section 547(c)(2), the "ordinary course of business" exception and/or section 547(c)(4), the "subsequent value" or "new value" exception.

The "ordinary course of business" exception protects transfers that were

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred; [4]

(C) made in the ordinary course of business and financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2) (1983). Each of the elements of the ordinary course exception must be satisfied for the exception to apply. *In re General Office Furniture Wholesalers, Inc.*, 37 B.R. 180, 183 (Bankr. E.D.Va.1984). The relevant transfers here fail to meet all the elements.

According to the legislative history of section 547(c)(2), the purpose of this exception "is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News, 5963, 6329; S.Rep. No. 989, 95th Cong., 2nd Sess. 88 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5874. It seems apparent, therefore, that section 547(c)(2) should not protect payments resulting from "unusual" debt collection or payment practices. *In re Craig Oil Co.*, 785 F.2d 1563, 1566 (11 Cir.1986); *See also In re Production Steel, Inc.*, 54 B.R. 417 (Bankr.M.D.Tenn.1985).

Although the debt between the parties was incurred in the ordinary course of business, the payments received were most extraordinary. The $11,909.92 was a substitute payment for antecedent debt incurred long before the 45-day "ordinary

---

4. The 45-day requirement was deleted by the Bankruptcy Amendments and Federal Judge-ship Act of 1984.

course" period. Although merchandise was shipped within 45 days of payment, we cannot find that the parties intended the payment at issue to satisfy invoices sent for these shipments. Instead, this $11,-909.92 check was an element of the debtor's effort to bring current its arrearage with ProGroup. With knowledge of the debtor's deteriorating financial condition, ProGroup threatened to discontinue future shipments unless the antecedent debt was liquidated in full, demanding three $11,-909.92 payments. This variation from the parties' usual course of dealing is significant. By its demand, ProGroup attempted to exercise leverage giving it more favorable terms than in the past. The $11,-909.92 payment was clearly outside of the ordinary course of business and, thus, not protected by section 547(c)(2). Likewise, the $3,000.00 payment was also a replacement check for antecedent debt and is similarly unprotected.

ProGroup also claims the benefit of the "subsequent value" or "new value" exception, which protects transfers that were

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(4). During the preference period, as shown in the shipment chart above, ProGroup claims it gave new value totalling $8,243.62. Because only value given after a transfer occurs is excepted from avoidance, the dispositive issue here is whether, for the purposes of section 547(c)(4), a transfer occurs upon delivery of a check or at the time the check is honored. If the Court considers the transfer complete upon delivery of the check, the trustee may not avoid the entire amount transferred here because ProGroup subsequently gave substantial new value by supplying the debtor with additional inventory. If, however, the Court finds the transfers oc-

curred only when each check was honored, ProGroup can only exempt value given after those dates, which is a considerably smaller amount.

This Court has previously ruled that, for purposes of section 547(b), transfer by check is not a transfer within the meaning of the statute until the check is honored by the drawee bank. *In re Bob Grissett Golf Shoppes, Inc.*, 34 B.R. 320 (Bankr.E.D.Va. 1983). Nevertheless, this holding does not settle the issue, since the time a transfer takes place under section 547(c) is not necessarily the same as under section 547(b). *See In re Almarc Manufacturing, Inc.*, 62 B.R. 684, 689 (Bankr.N.D.Ill.1986) and the cases cited therein.

Courts that have addressed this issue are not in accord. Some have adopted the simple rule that a transfer occurs only when the check is paid, regardless of when it is delivered. *See, e.g., In re Bellanca Aircraft Corp.*, 56 B.R. 339 (Bankr.D.Minn. 1985); others have held that the transfer occurs when the check is honored if payment is more than ten days after delivery, *In re Wadsworth Components, Inc.*, 711 F.2d 122 (C.A.Idaho 1983) or, alternatively, when delivered if payment is within ten days, *In re Blanton Smith Corp.*, 37 B.R. 303 (Bankr.M.D.Tenn.1984), or when delivered if paid within thirty days, *Matter of Fasano/Harris Pie Co.*, 43 B.R. 871 (Bankr.W.D.Mich.1984). Still others have held that a check is deemed transferred upon delivery if subsequently honored by the drawee bank. *In re Best Corporation*, CCH Bankruptcy Law Reports ¶ 71,798 (D.Conn.1987). See also *In re Almarc Manufacturing*, 62 B.R. 684 (Bankr.N.D. Ill.1986) and the cases cited therein. The latter line of cases is based on an analysis of the intent behind section 547(c)(4). These cases conclude that since section 547(c)(4) was intended to encourage creditors to continue doing business with a troubled enterprise, generally creditors should be allowed to rely on receipt of a check rather than waiting for it to be honored. *See, e.g., Id.* at 689. This conclusion presumes, however, that the creditor is reasonably relying on the check. Even the court in *In re Almarc Manufacturing* limits its

rule to cases in which the parties intended to treat a check as a cash transaction, specifically excepting from its ruling post-dated checks or those the debtor has requested the creditor hold. *Id.* at 688.

■ We find this latter line of cases persuasive because it supports the policy behind section 547(c)(4). This Court holds that, for the purpose of section 547(c)(4), the event of a transfer occurs when a check is delivered and subsequently honored only if the parties intended to rely on the check as a cash transaction and such reliance was reasonable under the circumstances. Otherwise the transfer occurs when the check is honored.

■ In the instant case, the parties clearly did not intend a cash transaction: the checks were post-dated and intended for antecedent debt. Additionally, ProGroup cannot reasonably maintain it was relying on the three $11,909.92 checks when it shipped additional merchandise on 30 August. At that time, ProGroup knew the three original $10,000.00 checks had been dishonored. When ProGroup accepted the three $11,909.92 checks in early August, each check was post-dated. Curiously, the honored check, No. 1905, was dated 28 August, whereas the dishonored checks were No. 1959, dated 9 August, and No. 1992, dated 23 August. This sequence brings into question which check was delivered first. Furthermore, check no. 1959 was dishonored on 19 August, eleven days before ProGroup made additional shipments [the dishonor date of Check No. 1992 is not in evidence]. While ProGroup may claim it was relying on the three $11,909.92 checks, the Court finds such reliance unreasonable. Because no shipments were made after the date of the five $3,000.00 checks (3 September) but before one was honored (13 September) the Court need not consider whether ProGroup relied on any of these checks. Under these circumstances, the

Court is persuaded that the transfers were effective only when the checks were honored: Check No. 1905 for $11,909.92, on 10 September and Check No. 3208 for $3,000.00, on 13 September.

Thus, the only amount that may be excepted from the preferential transfers under section 547(c)(4) is the value of goods that were shipped after the checks were honored. Only one invoice qualifies: No. 21998 for $290.86. Invoice No. 25930, dated 30 September 1982, purports to recharge a rebate improperly applied to merchandise shipped before the transfers. As such, this does not constitute subsequent value and will not be excepted. Accordingly, pursuant to section 550 [5] of the Code, the trustee may recover from ProGroup the difference between the preferential transfers and the subsequent value: $14,909.92 − $290.86 = $14,619.06. In addition to the $14,619.06, ProGroup is liable for interest running from the date the trustee first demanded ProGroup return the preferential transfer to the estate. *In re AOV Industries, Inc.,* 62 B.R. 968, 977 (Bankr.D.D.C.1986). The first date of demand in evidence is the date the instant complaint was filed, namely 8 August 1985. The rate of interest is to be determined per sections 6621 and 6622 of the Internal Revenue Code (26 U.S.C. §§ 6621, 6622) to compensate the estate for the use of these funds. *See Id.* at 977.

An appropriate Order will enter.

---

5. § 550. Liability of transferee of avoided transfer

  (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transfer-red, or, if the court so orders, the value of such property, from—

    (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
    (2) any immediate or mediate transferee of such initial transferee.