## In the Matter of KROH BROTHERS DEVELOPMENT CO., Debtor.

**KROH BROTHERS DEVELOPMENT CO., Kroh Brothers Equity Co., Kroh Brothers Realty Co., Kroh Investments I, Inc., Kroh Telecommunities, Inc., Ward Parkway Corporation, Plaintiffs–Appellants,**

v.

## CONTINENTAL CONSTRUCTION EN-GINEERS, INC., Defendants–Appellees.

Bankruptcy Nos. 87–00640–1–11, 89–1022–CV–W–5.

Adv. No. 88–0581–1–11.

United States District Court, W.D. Missouri, W.D.

April 20, 1990.

Jonathan A. Margolies, Kelly Charles Tobin, McDowell, Rice & Smith, Kansas City, Mo., for plaintiffs-appellants.

Robert E. Fitzgerald, Jr., Ann Thompson, Kenneth E. Jones, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendants-appellees.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Before this Court is the appeal and cross-appeal from an adversary proceeding decided by Bankruptcy Judge Karen M. See. Plaintiffs in the action below were the administrators of the debtors' bankruptcy estates, and sought recovery as preferential transfers of sums paid by the debtors to defendant Continental Construction Engineers, Inc. The Bankruptcy Court, agreeing in part with defendants' defense to the preferential transfer claim, reduced plaintiffs' claim, awarding plaintiffs $27,909.94. In accordance with the following reasoning, this Court affirms the decision of the Bankruptcy Court.

## I.  FACTUAL BACKGROUND

The Kroh Brothers Development Company ("KBDC"), formerly one of Kansas City's largest real estate development companies, filed its petition for relief under Chapter 11 of the Bankruptcy Code on February 13, 1987. Other entities related to KBDC subsequently filed bankruptcy un-

der Chapter 11. The Bankruptcy Court consolidated all of the related Chapter 11 cases and confirmed a plan of reorganization for all debtors on March 8, 1988. Plaintiffs in this action are the administrators of the debtors' bankruptcy estates (collectively referred to as "Administrators"), who are the designated parties-in-interest under the plan of reorganization.

The defendant in this action is Continental Construction Engineers, Inc. ("Continental"), a civil engineering firm which had provided professional engineering services to KBDC since 1981. Continental had performed a variety of civil engineering services for KBDC, including work on a real estate development project known as Hallbrook Farm. Debtor KBDC, as the sole general partner of KBHF Associates, Limited Partnership, had acquired in August of 1986 a portion of Hallbrook Farm for development pursuant to agreements with Hallmark Farms Associates.

Continental received a check from KBDC on December 12, 1986, in the amount of $46,887.34, representing payment on twelve invoices for work done for KBDC. KBDC's bank paid this check on December 22, 1986.

Continental received a second check from KBDC on December 15, 1986, in the amount of $10,512.79, representing payment on three additional invoices. KBDC's bank paid this check on January 6, 1987. These two checks, in the total amount of $57,400.13, were the basis of the Administrators' complaint against Continental. The complaint was filed on August 5, 1988 to recover the sum, plus interest, as a preferential transfer.

Continental's defense in the action was that the Administrators' preferential transfer claim was barred by 11 U.S.C. § 547(c)(4). That section of the Bankruptcy Code bars the bankruptcy trustee's recovery of preferential transfers when the creditor has conferred new value on the debtor after the transfer. Continental claimed that it had conferred new value on the debtor's estate by the performance of work for KBDC during the time period between the delivery of the first check on December 12, 1986 and the bankruptcy filing on February 13, 1987. Continental contended that because of this new value, the Administrators' preferential transfer claim was barred.

Continental stated that most of the services rendered after delivery of the first check on December 12, 1986 were in connection with the Hallbrook Farm project. KBDC was invoiced for the work performed after December 12, 1986, but did not pay. Continental received payment for the services from other parties.

KBDC entered into an agreement with Hallmark Farm Associates, from whom it had purchased its interest in Hallbrook Farm, on January 18, 1987. That agreement transferred and assigned, for consideration, all of KBDC's interest in Hallbrook Farm. The transfer included the engineering work performed to that date by Continental.

The Bankruptcy Court tried the adversary proceeding on January 10, 1989. The court determined that the Administrators had established a prima facie case of preferential transfer. The Court issued a memorandum order on July 28, 1989, holding that Continental had provided KBDC's bankruptcy estate with new value totaling $29,490.00, reducing the Administrators' preference claim to $27,909.94.

Plaintiffs, the Administrators, now appeal the Bankruptcy Court's action to this Court, and defendant, Continental, cross-appeals. The Administrators' appeal is based on the following issues: (1) whether the Bankruptcy Court erred in holding that the date of transfer of funds, for the purposes of the 11 U.S.C. § 547(c)(4) "new value" bar to recovery, is the date of the check's delivery rather than the date the check clears the bank; (2) whether the Bankruptcy Court erred in holding that 11 U.S.C. § 547(c)(4) allows a creditor who has been paid for the "new value" added to the creditor's estate to nonetheless assert the "new value" defense; and (3) whether the Bankruptcy Court's factual determination that the debtor's interest in the Hallbrook Farm project terminated on January 18, 1987 is clearly erroneous. Continental's

issue on cross-appeal is whether the Bankruptcy Court was clearly erroneous in refusing to include the services rendered by Continental employee Philip Gibbs in its calculation of the amount of new value.

## II. ANALYSIS

### A. *Standard of Review*

This Court has appellate jurisdiction to hear appeals from orders of bankruptcy judges pursuant to 28 U.S.C. § 158 (1984). This Court must review on appeal the issues of law and the issues of fact under two different standards. The following issues in the case at bar are issues of law: (1) whether the transfer date of a check under 11 U.S.C. § 547(c)(4) is the date of delivery or the date the check clears the bank; and (2) whether new value advanced to the debtor by a preference defendant may be paid and still qualify as a defense under 11 U.S.C. § 547(c)(4). This Court, as an appellate court, may make determinations on issues of law on a de novo basis without deference to the Bankruptcy Court's determination on the issue. *In re Blankemeyer,* 861 F.2d 192 (8th Cir.1988); *Combs v. Rubin,* 101 B.R. 590, 591 (W.D. Mo.1989).

The issue of when KBDC's interest in the Hallbrook Farm project terminated, and the disputed computation of the amount of new value are issues of fact. This Court, as an appellate court, must accept the Bankruptcy Court's findings of fact unless they are clearly erroneous. Bankr.R. 8013. The "clearly erroneous" standard means that factual findings of the trial court will be reversed only when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citations omitted). Reversal is appropriate under these circumstances even if there was some evidence to support the judgment in the lower court. *Id.*

### B. *Time of Transfer for Purposes of "New Value" Bar*

■ The Administrators contend that the Bankruptcy Court erred in concluding that the time of transfer for the purposes of 11 U.S.C. § 547(c)(4) is the time of delivery of the check. This is an issue of law, and will be reviewed by this Court on a de novo basis.

The Administrators state that case law establishes the transfer date as the date the check is honored by the drawee bank, rather than the date the check is delivered. The date is at issue because the calculation of the amount of "new value" will vary according to when the transfer is deemed to have occurred. If the transfer is determined to have occurred when the checks were honored by the bank, several days of Continental's professional services rendered after delivery of the checks would go uncompensated.

The Bankruptcy Court below, in a well-reasoned decision, held that the date of transfer for the purposes of computing "new value" is the time of delivery of the check. The Bankruptcy Court relied both on established case law, *see, e.g., Amarex, Inc. v. Aztec Specialty Leasing Co. (In re Amarex, Inc.),* 88 B.R. 362, 365 (W.D.Okla. 1988); *Thomas W. Garland, Inc. v. Union Electric Co. (In re Thomas W. Garland, Inc.),* 19 B.R. 920, 928 (E.D.Mo.1982), and on public policy.

The strong public policy of encouraging creditors to deal with troubled businesses was a focus of the Bankruptcy Court's opinion. The intent of the Bankruptcy Court was to promote that public policy by holding that transfers occur upon check delivery, thereby lengthening the period of time for calculating the "new value." The action of the Bankruptcy Court is supported by a recent Eighth Circuit opinion recognizing that important policy. *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.),* 850 F.2d 1275, 1280 (8th Cir.1988).

This Court is unpersuaded by the Administrators' argument that the Court is bound by precedent established by *Dubuque Packing Co. v. Stonitsch (Matter of Isis Foods, Inc.),* 37 B.R. 334 (W.D.Mo.1984). The *Dubuque Packing* court did not con-

strue 11 U.S.C. § 547(c)(4), but instead construed 11 U.S.C. § 549(a), a section allowing bankruptcy trustees to avoid post-petition transfers. *Dubuque Packing* therefore does not control the issue of time of transfer in the case at bar.

This Court will not further restate the sound reasoning of the Bankruptcy Court. This Court, in a de novo review of the issue of time of transfer, will affirm the decision of the Bankruptcy Court regarding the date of transfer.

### C. Must "New Value" Remain Unpaid

■ The next issue which must be reviewed by this Court on a de novo basis is whether the Bankruptcy Court erred in sustaining Continental's "new value" defense despite the fact that Continental had been paid for its services by a party other than KBDC. Many courts have ruled contrary to the Bankruptcy Court below, concluding that the new value must remain unpaid under 11 U.S.C. § 547(c)(4). *See Matter of Prescott*, 805 F.2d 719, 731 (7th Cir.1986).

The determination of the Bankruptcy Court below was based on three factors: (1) the established precedent in this Circuit; (2) the specific language of 11 U.S.C. § 547(c)(4); and (3) public policy considerations. The Bankruptcy Court below first analyzed the precedent established in this Circuit by Judge John Oliver in *Valley Candle Mfg. Co. v. Stonitsch (Matter of Isis Foods, Inc.)*, 39 B.R. 645 (Bankr.W.D. 1984). Judge Oliver held that a creditor need not go unpaid in order to avail himself of the "new value" defense. The Bankruptcy Court below concluded that the reasoning of Judge Oliver in *Valley Candle* controlled the case at bar.

The Bankruptcy Court then analyzed the second factor: the language of the statute. The Court noted that section 547(c)(4) does not by its express language require that new value remain unpaid in order for the new value to be a defense to a preferential transfer. The Court concluded that this factor weighed in favor of not requiring that the new value remain unpaid.

The Bankruptcy Court below then analyzed the third factor, stating that public policy supported the proposition that new value does not have to be unpaid. The policy of § 547(c)(4) is to "'insulate from preference attack a transfer to a creditor to the extent that the creditor thereafter replenishes the estate.'" *Erman v. Armco, Inc. (In re Formed Tubes, Inc.)*, 46 B.R. 645, 647 (E.D.Mich.1985) (citations omitted). This policy is implicit in the language of the statute, which conditions the exception on the absence of an unavoidable transfer in connection with the new value.

The rationale for this policy is that new value extended in an amount equal to the preference payment in effect returns the preference to the estate. *Id.* Since the preference has been returned, the estate has not been harmed and there is no justification for requiring return of the preference payment. *Id.; see also Young v. Peter J. Saker, Inc. (In re Paula Saker & Co.)*, 53 B.R. 630 (S.D.N.Y.1985). Therefore, the inquiry should be not whether the new value was unpaid, but rather whether the estate was replenished by the new value. *Erman v. Armco*, 46 B.R. at 647, n. 4; *accord Young v. Peter J. Saker, Inc.*, 53 B.R. at 634 ("each transfer must be examined independently to determine whether or not the creditor has replenished the estate").

In a case factually analogous to the case at bar, a Michigan federal district court based its decision on the above public policy. *Erman v. Armco*, 46 B.R. at 647. That case also involved payment for the new value by third parties and not by the debtor. The *Erman v. Armco* court stated that "[i]t is the impact of the payment on the estate and not the source of the payment that is determinative as to whether § 547(c)(4) is available as a defense to a creditor who has received a preferential transfer." *Id.* at 647, n. 4. The Michigan court reasoned that payment by third parties did not diminish the estate, and thus did not defeat the purpose of the new value defense. *Id.* at 647. The court concluded that new value did not have to remain unpaid in order to avoid a preference claim. *Id.*

Another court held that new value did not have to remain unpaid in order to be a valid defense. A New York federal district court cited an additional public policy justification for its ruling. The court in *Young v. Peter J. Saker,* stated that to interpret the language to require that the advance must be unpaid would limit the exemption allowed by § 547(c)(4) to only one subsequent advance of new value. 53 B.R. at 634. The court reasoned that there was no indication that Congress intended that result. Legislative history, in fact, indicates that Congress anticipated the application of 11 U.S.C. § 547(c)(4) to "more than one exchange during the ninety day period ..." *Young v. Peter J. Saker, Inc.,* 53 B.R. at 634 (citing H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 373 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 88 (1978), 1978 U.S.Code Cong. & Admin.News 5787, 5874, 6329). The *Young* court reasoned that to construe the language of § 547(c)(4) to require that new value advanced remain unpaid would defeat the stated legislative intent of the section. The court concluded that new value need not be unpaid.

The Administrators contend that the third parties who paid for the "new value" of Continental's engineering services, the new value, were the owners of the development projects. They contend that the project owners were the true beneficiaries of Continental's services, and that therefore Continental's services did not replenish the estate.

This Court is unpersuaded by this argument. KBDC contracted for the services. The services were performed pursuant to direction by KBDC and for KBDC. The extent of the ownership interest of KBDC in each of the development projects is not known from the facts below. However, the extent of the ownership interest in the projects themselves is not pertinent to this issue. A real estate development company has, by definition, an interest in the completion of their real estate development project. For example, KBDC's transfer of its interest in Hallbrook Farm to Hallmark Farm Associates included Continental's engineering work, which presumably enhanced the value of the development project. This Court concludes that the estate of the development company, KBDC, was replenished by Continental's engineering work on the development projects and that the new value in the case at bar can remain unpaid.

The Bankruptcy Court below specifically limited its holding on the issue of whether new value must remain unpaid to the facts of the case at bar. The court below declined to rule on the issue of whether new value is considered unpaid if paid for by a party other than the debtor. This Court will similarly limit its holding to the facts of the case at bar.

This Court finds the reasoning of the Bankruptcy Court below to be persuasive. The arguments advanced by the Administrators are not sufficient to overturn the established precedent in this Circuit on the facts of the case at bar.

## D. Termination of KBDC's Interest in Hallbrook Farm

The Administrators next contend that the Bankruptcy Court erred in determining that KBDC's interest in the Hallbrook Farm project terminated on January 18, 1987 by letter from Donald Hall. The Administrators contend that KBDC's interest terminated on December 22, 1987. The date is significant because the work performed by Continental on the Hallbrook Farm project after termination of KBDC's interest in the project could not be calculated into the new value advanced by Continental.

The memorandum decision of the Bankruptcy Court below is well-reasoned, and more than adequately supports its conclusion that KBDC's interest in the Hallbrook Farm project terminated on January 18, 1987. The Bankruptcy Court's decision is not clearly erroneous. This Court will not restate the reasoning of the Bankruptcy Court, but will affirm the decision in its entirety.

## E. Services of Philip Gibbs in Calculation of New Value

Continental, in its cross-appeal against KBDC, contends that the Bankruptcy

Court erred in not including the value of the services of Continental employee, Philip Gibbs, in its calculation of the amount of new value. Again, this Court finds the reasoning of the Bankruptcy Court to be sound and clearly stated. This Court is left with no definite and firm conviction that the Bankruptcy Court was mistaken, in accordance with the "clearly erroneous" standard enunciated in *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citations omitted). Therefore, this Court affirms the decision of the Bankruptcy Court below that Gibbs' time not be included in the calculation of new value under 11 U.S.C. § 547(c)(4).

### III. CONCLUSION

This Court has reviewed the four issues appealed by Continental and KBDC from the Bankruptcy Court below. This Court conducted a de novo review of the two issues of law in accordance with the appropriate appellate standard of review for issues of law. This Court concludes that the Bankruptcy Court did not err in holding that the date of transfer, for purposes of 11 U.S.C. § 547(c)(4), is the date on which a check is delivered to a creditor.

The second issue of law upon which this Court conducted a de novo review was whether Section 547(c)(4) allows a creditor who has been paid for the "new value" added to the creditor's estate to nonetheless assert the "new value" defense. This Court found that the Bankruptcy Court below did not err in holding, under the facts of the case at bar that there was no requirement that the new value remain unpaid.

This Court also did not find clearly erroneous the Bankruptcy Court's determination that KBDC's interest in Hallbrook Farms ended on January 18, 1987. Likewise, this Court did not find clearly erroneous the Bankruptcy Court's elimination of the value of the work done by Continental employee Gibbs from the calculation of new value.

Accordingly, it is hereby

ORDERED that the decision of the United States Bankruptcy Court for the Western District of Missouri in the above-styled case is affirmed.