**In the Matter of KROH BROTHERS DE-VELOPMENT COMPANY; Kroh Brothers Equity Company; Kroh Brothers Realty Company; Kroh Investments I, Inc.; Kroh Telecommunities, Inc.; Ward Parkway Corp., a Missouri Corporation, Debtors.**

**KROH BROTHERS DEVELOPMENT COMPANY; Kroh Brothers Equity Company; Kroh Brothers Realty Company; Kroh Investments I, Inc.; Kroh Telecommunities, Inc.; Ward Parkway Corp.; and the Kroh Operating Limited Partnership, Appellants/Cross-Appellees,**

v.

**CONTINENTAL CONSTRUCTION EN-GINEERS, INC., Appellee/ Cross-Appellant.**

Nos. 90–1799, 90–1822.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1990.

Decided April 18, 1991.

---

Johnathan A. Margolies, Kansas City, Mo., for appellants/cross-appellees.

Kenneth C. Jones, Kansas City, Mo., for appellee/cross-appellant.

Before BOWMAN and BEAM, Circuit Judges and HARRIS,* District Judge.

BEAM, Circuit Judge.

The debtor, Kroh Brothers Development Corporation, brought this adversary proceeding in bankruptcy court against Continental Construction Engineers, Inc. to recover preferential transfers of $57,400.13. In response, Continental asserted that it gave new value of $29,490.14 to or for the benefit of Kroh Brothers. *See* 11 U.S.C. § 547(c)(4) (1988).[1] The bankruptcy court allowed Continental to assert the new value defense and awarded Kroh Brothers $27,-909.94 plus interest. *See Kroh Bros. Dev. Co. v. Aoki Landscape Maintenance (In re Kroh Bros. Dev. Co.)*, 104 B.R. 182 (Bankr.W.D.Mo.1989), *aff'd*, 114 B.R. 658 (W.D.Mo.1990).

On appeal, Kroh Brothers contends: (1) that the lower courts erred in holding that the date a check is delivered is the date of transfer for purposes of section 547(c)(4); (2) that Continental is not entitled to assert a new value defense because it was paid for the new value by sources other than Kroh Brothers; and (3) that the lower

courts erred in the finding of the date on which Kroh Brothers' interest in a particular development project was terminated. On cross-appeal, Continental argues that the lower courts erroneously computed the amount of new value it gave to Kroh Brothers. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

Kroh Brothers, formerly one of Kansas City's largest real estate development companies, filed a chapter 11 petition on February 13, 1987. Continental is a civil engineering firm which had done contracting work for Kroh Brothers since 1981. Prior to the bankruptcy filing, Continental was working on several projects for Kroh Brothers, including one in which Kroh Brothers had an ownership interest. This appeal concerns Kroh Brothers' concededly preferential payments to Continental for these projects.

The first payment was for twelve invoices in the amount of $46,887.34 and was made by check dated December 12, 1986. The check was paid by the drawee bank on December 22, 1986. The second check was for three invoices in the amount of $10,-512.79 and was dated December 15, 1986. This check was paid on January 6, 1987. The bankruptcy court concluded that, although the payments were preferences, Continental could offset them with construction services provided to Kroh Brothers until the date of filing. Because the bankruptcy court concluded that the date of transfer for purposes of section 547(c)(4) is the date a check is delivered, it calculated the new value from December 13, 1986, just after the first preferential payment, to February 13, 1987, the date of filing. Thus, the bankruptcy court awarded judgment to Kroh Brothers for $27,909.94, the

---

* The Honorable Oren Harris, Senior United States District Judge for the Eastern/Western Districts of Arkansas, sitting by designation.

**1.** Section 547(c) provides:
(c) The trustee may not avoid under this section a transfer—
. . . .
(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor

gave new value to or for the benefit of the debtor—
(A) not secured by an otherwise unavoidable security interest; and
(B) on account of which; new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.
11 U.S.C. § 547(c) (1988).

amount of the two preferential transfers less the new value advanced.

The district court affirmed these findings as well as the bankruptcy court's conclusion that Continental was entitled to assert a new value defense even though it had been paid for at least some of the new value. The bankruptcy court found that while none of Continental's invoices for the services constituting new value were paid by Kroh Brothers, "Continental received payment on the ... projects from sources other than Kroh." *In re Kroh Bros.*, 104 B.R. at 194. The district court noted that Kroh Brothers contends that these sources "were the owners of the development projects." *In re Kroh Bros.*, 114 B.R. at 662. In spite of these statements that Continental had been paid for its services, both courts nevertheless indicated that they did not decide "whether new value is considered unpaid if paid for by a party other than the debtor." *Id. See also In re Kroh Bros.*, 104 B.R. at 195 n. 8. As indicated, both parties appeal.

## II. DISCUSSION

### A. Transfer on delivery

■ For purposes of calculating new value under section 547(c)(4), the bankruptcy court concluded that the preferential transfers occurred when the checks were delivered, not when they were paid. *In re Kroh Bros.*, 104 B.R. at 189. The court relied on the policy served by section 547(c)(4)—encouraging creditors to deal with troubled businesses—and distinguished it from the policy served by section 547(b)—promoting distributive equality. *Id.* at 188–89. The district court affirmed on the sound reasoning of the bankruptcy court. *In re Kroh Bros.*, 114 B.R. at 660–61. We agree with this reading of the statute.

While the courts are not unanimous on this issue, by far the majority hold that, for purposes of section 547(c)(4), the transfer occurs when the check is delivered.[2] Ferguson, *Does Payment by Check Constitute a Transfer upon Delivery or Payment?*, 64 Am.Bankr.L.J. 93, 95 & n. 5 (1990) (citing cases). *But cf. Foreman Indus. v. Broadway Sand & Gravel (In re Foreman Indus.)*, 59 B.R. 145, 151 (Bankr. S.D.Ohio 1986) (declining to find transfer on delivery under section 547(c)(2) because to do so would be "at odds with an overriding principle of placing creditors at parity"); *Hartwig Poultry v. C.W. Serv. (In re Hartwig Poultry)*, 57 B.R. 236, 239 (Bankr. N.D.Ohio 1986) (for purposes of section 547(c)(4), transfer on payment because check not an assignment but only an order for drawee bank to pay on proper presentment), *rev'd*, 87 B.R. 30, 32 (N.D.Ohio 1988); *Grogan v. Chesebrough–Ponds (In re Advance Glove Mfg. Co.)*, 25 B.R. 521, 528–29 (Bankr.E.D.Mich.1982) (applying section 547(c)(2), transfer on delivery would encourage collusive and fraudulent agreements between debtors and creditors and would frustrate equality of distribution). Most of those courts holding that transfer occurs on delivery rely on the policy served by section 547(c)(4). As this court has characterized that policy, section 547(c)(4) " 'was not enacted to ensure equitable treatment of creditors, but rather is intended to encourage creditors to deal with troubled businesses.' " *In re Bellanca Aircraft*, 850 F.2d at 1280 (quoting *Chaitman*

---

**2.** We are apparently the first circuit to decide this question under section 547(c)(4). The issue was before us once before but not decided. *See Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1284 (8th Cir.1988). Aside from those circuits discussing the same question under sections 547(c)(1) and (2), *see infra* note 3, only the Third Circuit has directly discussed the date of transfer issue in the context of section 547(c)(4). *See New York City Shoes v. Bentley Int'l (In re New York City Shoes)*, 880 F.2d 679 (3d Cir. 1989). The Third Circuit, however, considered when the transfer occurred in the context of a post-dated check. The court relied on the policy served by section 547(c)(4) to conclude that "there is a presumption that postdated checks are transferred for section 547(c)(4) purposes either on the date on the face of the check or on the date that the check clears the bank." *Id.* at 679 (footnote omitted). Citing cases on the policy served by section 547(c)(4), the court held that this rule differs from that for currently-dated checks because a post-dated check is not similarly "business as usual." *Id.* at 683. We rely on *In re New York City Shoes* only as far as its discussion of the policy underlying section 547(c)(4) supports its implication that the date of transfer for a currently-dated check is the date of delivery.

*v. Paisano Automotive Liquids (In re Almarc Mfg.)*, 62 B.R. 684, 687–88 (Bankr.N. D.Ill.1986)). By contrast, 11 U.S.C. § 547(b) (1988), which provides that the trustee may avoid a preferential transfer, seeks to ensure equality of distribution among creditors. Thus, while the majority of courts hold that transfer occurs on payment for purposes of determining when a preference occurs under section 547(b), *see* Ferguson, *supra*, at 94, the different policy served by section 547(c)(4) justifies a different conclusion about when a transfer occurs for purposes of section 547(c)(4). *See In re New York City Shoes*, 880 F.2d at 681 n. 2 (date of transfer under section 547(b) not necessarily the same as under section 547(c)(4) because of different purposes furthered by the sections); *In re Almarc Mfg.*, 62 B.R. at 687, 689 n. 8 (sections 547(b) and 547(c)(4) "have entirely different purposes" and different rules justified); *Gold Coast Seed Co. v. Spokane Seed Co. (In re Gold Coast Seed Co.)*, 30 B.R. 551, 553 (9th Cir. BAP 1983) ("Congress did not contemplate a unitary concept for the time of 'transfer' under section 547.").

■ The courts are in general agreement that section 547(c)(4) seeks to encourage creditors to deal with troubled businesses in the hope of rehabilitation. *See In re New York City Shoes*, 880 F.2d at 680–81; *In re Almarc Mfg.*, 62 B.R. at 688–89; *Valley Candle Mfg. Co. v. Stonitsch (In re Isis Foods)*, 39 B.R. 645, 651 (W.D.Mo. 1984). This rationale presumes that creditors who ordinarily provide goods to purchasers on credit treat a payment by check as a cash transaction, and therefore ship a new order of goods upon receipt of a check. *See In re Almarc Mfg.*, 62 B.R. at 688. Shipping on receipt rather than waiting for

the check to clear, as creditors might be forced to do were a shipment not considered a subsequent advance under section 547(c)(4), does not disrupt the potential debtor's normal business flow. The effect of such a shipping delay, especially "on businesses requiring perishables, such as restaurants or grocery stores, could be to push the debtors into bankruptcy rather than to keep them out." *Id.* at 689. Moreover, were the transfer to occur only on payment by the drawee bank, the creditor who shipped goods in the ordinary course of business in reliance on payment by check for a prior shipment would not benefit from section 547(c)(4) even though the effect on the bankruptcy estate—enhancement—would be the same as if the creditor waited for the check to clear. In effect, a rule of transfer on payment would enhance the bankruptcy estate at the creditor's expense, discouraging commerce with a shaky business. *See id.* at 688. A rule that a transfer occurs on delivery, then, both avoids unnecessary bankruptcies and treats creditors fairly. *See In re New York City Shoes*, 880 F.2d at 681; *In re Almarc Mfg.*, 62 B.R. at 688–89. Thus, we join those courts holding that, for purposes of section 547(c)(4), payment by check constitutes a transfer upon delivery, not upon payment.[3] The district court correctly calculated the new value beginning after December 13, 1986.

### B. Payment for new value

Kroh Brothers also argues that Continental cannot rely on section 547(c)(4) because Continental was paid for the services constituting the new value. Both the bankruptcy and district court relied on *In re Isis Foods*, 39 B.R. at 653, as controlling au-

---

**3.** Like section 547(c)(4), sections 547(c)(1) and (2), dealing with contemporaneous exchanges and payments in the ordinary course of business, also seek to encourage dealings with distressed businesses "by insulating normal business transactions from the trustee's avoidance power." Ferguson, *supra*, at 103; *Remes v. Acme Carton Corp. (In re Fasano/Harriss Pie Co.)*, 43 B.R. 871, 876 n. 4 (Bankr.W.D.Mich. 1984). Given that these subsections share common goals, we note that all the circuits that have considered when a transfer occurs for pur-

poses of sections 547(c)(1) and (2) have found transfer upon delivery. *See Braniff Airways v. Midwest Corp.*, 873 F.2d 805, 807–08 (5th Cir. 1989); *Durham v. Smith Metal & Iron Co. (In re Continental Commodities)*, 841 F.2d 527, 530 (4th Cir.1988); *Kupetz v. Elaine Monroe Assoc. (In re Wolf & Vine)*, 825 F.2d 197, 201 (9th Cir.1987); *Bernstein v. RJL Leasing (In re White River Corp.)*, 799 F.2d 631, 633 (10th Cir.1986), *rev'g* 50 B.R. 403 (Bankr.D.Colo.1985); *O'Neill v. Nestle Libby's P.R.*, 729 F.2d 35, 37 (1st Cir. 1984).

thority for the proposition that the application of section 547(c)(4) is not "limited to new value that is unpaid." *See In re Kroh Bros.*, 114 B.R. at 661; *In re Kroh Bros.*, 104 B.R. at 195. The majority of courts, however, hold that a creditor who has received payment from the debtor for new value cannot rely on section 547(c)(4). In *In re New York City Shoes*, the Third Circuit set forth the requirements of section 547(c)(4):

> First, the creditor must have received a transfer that is otherwise avoidable as a preference under § 547(b). Second, *after* receiving the preferential transfer, the preferred creditor must advance "new value" to the debtor on an unsecured basis. Third, the debtor must not have fully compensated the creditor for the "new value" as of the date that it filed its bankruptcy petition.

*In re New York City Shoes*, 880 F.2d at 680. *Accord Charisma Investment Co. v. Airport Sys. (In re Jet Florida Sys.)*, 841 F.2d 1082, 1083 (11th Cir.1988) (same); *In re Prescott*, 805 F.2d 719, 728, 731 (7th Cir.1986) ("The creditor that raises a 'subsequent advance' defense has the burden of establishing that new value was extended, which remains unsecured and unpaid after the preferential transfer."); *Iannacone v. Klement Sausage Co. (In re Hancock–Nelson Mercantile Co.)*, 122 B.R. 1006, 1016 (Bankr.D.Minn.1991) ("the great majority of courts addressing the issue have concluded that the *Isis Foods* holding 'seems contrary to common sense and the clear intent of the statute' " (quoting *Global Int'l Airways v. Evergreen Air Center (In re Global Int'l Airways)*, 80 B.R. 990, 992 n. 4 (Bankr.W.D.Mo.1987)); *Wolinsky v. Central Vermont Teachers Credit Union (In re Ford)*, 98 B.R. 669, 681 (Bankr. D.Vt.1989) (new value must be unpaid; collecting cases); *In re Almarc Mfg.*, 62 B.R. at 686 (section 547(c)(4) requires preference, that new value be unsecured and unpaid). *But cf. Young v. Peter J. Saker, Inc. (In re Paula Saker & Co.)*, 53 B.R. 630, 634 (Bankr.S.D.N.Y.1985) ("Interpreting the language to require that the advance would not be repaid would, more-over, sharply limit the exemption to one subsequent advance.").

The trustee is able to avoid preferences in bankruptcy for the sake of equality of distribution of assets among creditors. Therefore, a preference does not merely diminish the estate, it does so unfairly. *See* H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 177–78, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6138. A creditor who subsequently advances to the estate new value in an amount equal to the preference, however, "in effect returns the preference to the estate." *Erman v. Armco (In re Formed Tubes)*, 46 B.R. 645, 647 (Bankr.E.D.Mich.1985) (quoting 2 Norton, *Bankruptcy Law & Practice* § 32.20 (1981)). The debtor who makes a preferential transfer to a creditor who subsequently advances new value, then, has not "depleted the bankruptcy estate to the disadvantage of other creditors." *In re Florida Jet Sys.*, 841 F.2d at 1083. *Accord Bernstein v. RJL Leasing (In re White River Corp.)*, 50 B.R. 403, 409 (Bankr.D. Colo.1985), *rev'd on other grounds*, 799 F.2d 631 (10th Cir.1986). But when a debtor pays for new value or the creditor retains a security interest in the new value, "there is in effect no return of the preference." *In re Formed Tubes*, 46 B.R. at 647. Thus, the relevant inquiry under section 547(c)(4) is whether the new value replenishes the estate. If the new value advanced has been paid for by the debtor, the estate is not replenished and the preference unfairly benefits a creditor.

As indicated, the bankruptcy court, while conceding "that the majority of courts apply an 'unpaid new value' requirement," *In re Kroh Bros.*, 104 B.R. at 195, nevertheless held that Continental could avail itself of the defense regardless of whether it received payment for its services. Thus, although the court found that Continental received payment for some of its services, *see id.* at 194, the court concluded that "under the facts presented in this case, there is no 'unpaid new value' requirement." *Id.* at 195 (footnote omitted). The district court agreed. In considering whether Continental could rely on section 547(c)(4), the district court considered

whether the debtor's estate was replenished by the new value given. *In re Kroh Bros.*, 114 B.R. at 661. Finding that the work done by Continental benefited Kroh Brothers and therefore replenished the estate, the district court concluded that "the new value in the case at bar can remain unpaid." *Id.* at 662.

From this, we are uncertain what the lower courts held. Both parties argue on appeal that this case requires that we consider whether a creditor who has been paid for new value by some party other than the debtor can assert section 547(c)(4) as a defense. However, both the bankruptcy court and the district court expressly limited their holdings in such a way as to avoid this third-party issue. As the district court wrote: "The court below declined to rule on the issue of whether new value is considered unpaid if paid for by a party other than the debtor. This Court will similarly limit its holding to the facts of the case at bar." *Id.* at 662. *See also In re Kroh Bros.*, 104 B.R. at 195 n. 8. Yet it appears that Continental received some payments for new value advanced. The payments were allegedly made, however, by parties other than Kroh Brothers. *Id.* at 194; Brief for Appellee at 13 ("The majority of these invoices were paid by third parties unrelated to [Kroh Brothers], and the remaining invoices were never paid. *None of the subject invoices were paid by* [Kroh Brothers].").

■ To the extent that the opinions of the bankruptcy and district courts can be read to hold that a creditor who has been paid for new value *by the debtor* can nevertheless assert a new value defense, we disagree. Rather, we think that section 547(c)(4) is not available to a creditor to the extent the creditor has received payment from the debtor for the goods or services constituting new value. To the extent, however, that this case presents the issue of the availability of section 547(c)(4) in the third-party context, we must inquire further.

■ Apparently only one bankruptcy court has considered this question. In *In re Formed Tubes*, the debtor, a manufac-turer of industrial tubing, regularly purchased steel from the creditor Armco. Armco was the beneficiary in all shipments to Formed Tubes of irrevocable letters of credit. On August 17, 1981, within ninety days of filing a chapter 7 petition, Formed Tubes owed Armco approximately $300,000. Before the bankruptcy filing, however, Formed Tubes paid Armco $109,000 on the indebtedness, and Armco made further shipments in excess of $109,000. After the bankruptcy filing, Armco drew on the letters of credit for payment of the new value shipments. Thus, when the trustee sought to avoid the $109,000 payment to Armco and Armco asserted section 547(c)(4) as a defense, the court was left to consider whether the defense should be available to a creditor who had been paid for the new value by a third party.

In answering the question, the bankruptcy court considered whether the estate had been replenished. "Since Armco shipped steel to the debtor with a value in excess of $109,000 after it received the $109,000 payment, it has a defense to the trustee's action unless the new value was either directly or indirectly removed from the estate." *In re Formed Tubes*, 46 B.R. at 647. That is, only the effect on the estate, not the source of payment, is relevant. *Id.* at 647 n. 4. In the case of payment by a third party with a secured claim against the estate, such payment would preclude a new value defense because the third party's secured claim would indirectly deplete the estate. That is, the payment would have "the same impact upon the estate as a payment made directly by the debtor." *Id.*

We agree with this analysis. Normally, a creditor able to assert a new value defense because the new value has not been paid will be in the same position as if the preference had not been made. That is, because of the defense, the creditor will be entitled to offset the preference against the unpaid new value, while retaining an unsecured claim for the antecedent debt. In effect, section 547(c)(4) "puts the debtor on a C.O.D. basis. It is as if the creditor is being paid in advance of shipments, rather than being paid for antecedent debts." *Co-*

*lumbia Packing Co. v. Allied Container Corp. (In re Columbia Packing Co.)*, 44 B.R. 613, 615 (Bankr.D.Mass.1984). Even if the new value exceeds the preference amount, the estate will still owe the antecedent debt. *See, e.g., In re Hancock–Nelson Mercantile Co.*, 122 B.R. at 1016 ("unpaid trade debt of the debtor to the defendant which predates the preferential transfer may not be applied to reduce the trustee's recovery"). Because the estate has been enhanced by the new value, however, the estate and the creditor are in the same relative positions as if the preference had not been made.

As the court in *In re Formed Tubes* correctly determined, if the creditor receives payment from a third party who has a secured claim against the estate, the relative positions of the creditor and estate change. If allowed to assert the new value defense, the creditor would be entitled to retain the preference to offset against the new value even though the creditor also received a cash payment for the new value from the third party. The position of the creditor would be better than if the preference had not been made. This beneficial effect on the creditor, however, is not decisive. The rationale behind preference avoidance, distributive equality, compels us to consider whether the preference retention is to the detriment of other creditors. In the case of payment by a secured third party, the estate would indeed be diminished. Because the third party who paid the creditor would be able to assert a secured claim against the estate for the amount of the new value, the new value would deplete rather than replenish the estate insofar as unsecured creditors are concerned. *See In re Formed Tubes*, 46 B.R. at 647 n. 4. The availability of the defense, then, depends on the ultimate effect on the estate.

## III. CONCLUSION

We cannot, however, apply this analysis to the facts of the case before us. From

the record, it is unclear for which services constituting new value Continental received payment, by whom, and when. It is similarly unclear whether the third parties making such payments were secured or unsecured creditors, or neither.[4] Accordingly, we affirm the judgment of the district court that the date a check is delivered is the date of transfer for purposes of section 547(c)(4). The district court's judgment that Continental is entitled to assert a new value defense regardless of payment by third parties, however, is reversed and remanded for proceedings not inconsistent with this opinion. In all other respects, including those on which Continental cross-appeals, the judgment of the district court is affirmed.

---

4. Even though Kroh Brothers has hinted at it, *see* Reply Brief for Appellants at 10, we have trouble believing the third possibility—that the third parties who paid Continental for its services had no claim against the estate. As Kroh Brothers' argument implies, payment by third parties without any claim probably has more to

do with whether new value has been given to or for the benefit of the debtor than with the application of section 547(c)(4) in the third-party context. In other words, perhaps the value extended by certain entities was for the benefit of the third party and was not new value extended to the bankruptcy estate.