In re KROH BROTHERS DEVELOP-
MENT COMPANY, Kroh Brothers Eq-
uity Company, Kroh Brothers Realty
Company, Kroh Investments I, Inc.,
Kroh Telecommunities, Inc., Ward
Parkway Corp., Debtors.

KROH BROTHERS DEVELOPMENT
COMPANY and The Kroh Operating
Limited Partnership, by I.I. Ozar, Man-
aging Agent and Estate Administrator,
Plaintiffs,

v.

CONTINENTAL CONSTRUCTION ENGI-
NEERS, INC. and Aoki Landscape
Maintenance, Inc., Defendants.

Bankruptcy Nos. 87–00640–1–11, 87–
01265–1–11, 87–00641–1–11, 87–01263–1–
11, 87–01930–1–11 and 87–01266–1–11.
Adv. No. 88–0581–1–11.

United States Bankruptcy Court,
W.D. Missouri.

Aug. 28, 1991.

Jonathan Margolies, McDowell, Rice &
Smith, Kansas City, Mo., for plaintiffs.

Kenneth C. Jones, Watson, Ess, Marshall
& Enggas, Kansas City, Mo., for defen-
dants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON REMAND

**KAREN M. SEE, Bankruptcy Judge.**

On April 18, 1991 the Eighth Circuit Court of Appeals issued an opinion 930 F.2d 648 affirming the District Court 114 B.R. 658 and Bankruptcy Court opinions 104 B.R. 182 and remanding for further findings on one narrow issue as to the new value defense and payment by a third party. The following findings of fact and conclusions of law, entered pursuant to the Eighth Circuit's directions, determine all remaining issues.

### I. FINDINGS OF FACT

1. Continental is a civil engineering firm which had provided professional engineering services to Kroh Brothers Development Company ("KBDC") since 1981. In 1986, the year prior to KBDC's bankruptcy, Continental provided services on several KBDC projects.

2. On December 12, 1986, Continental received a check from KBDC for $46,887.34 as payment on 12 invoices, and on December 15, 1986, Continental received a second check from KBDC for $10,512.79 representing payment on three additional invoices.

3. After receiving the December 12 check, Continental continued to provide engineering services to KBDC at KBDC's request on the following KBDC projects: 119th & Metcalf; 8140 Ward Parkway; UMKC North; Ward Parkway Theatres and Hallbrook.

4. The total value of services performed by Continental for KBDC from December 13, 1986 to February 12, 1987 is $29,490.19, broken down as follows:

### TOTAL VALUE OF SERVICES DEFENDANT RENDERED AFTER DECEMBER 12, 1986 FOR THE MONTH OF DECEMBER, 1986

| DATE | PROJECT | VALUE OF SERVICES | DATE | PROJECT | VALUE OF SERVICES |
|---|---|---|---|---|---|
| 12–13 | HALLBROOK | $ 460.00 | 12–21 | HALLBROOK | 175.00 |
| 12–15 | UMKCN | 595.00 | 12–22 | 119TH | 150.00 |
| | 8140 | 45.00 | | 8140 | 45.00 |
| | HALLBROOK | 1,480.00 | | HALLBROOK | 1,717.50 |
| 12–16 | UMKCN | 385.00 | 12–23 | 119TH | 180.00 |
| | 8140 | 135.00 | | WP | 1,060.00 |
| | HALLBROOK | 1,610.00 | | HALLBROOK | 2,125.00 |
| 12–17 | UMKCN | 545.00 | 12–24 | HALLBROOK | 1,595.00 |
| | HALLBROOK | 1,535.00 | 12–26 | HALLBROOK | 405.00 |
| 12–18 | UMKCN | 460.00 | 12–27 | HALLBROOK | 1,035.00 |
| | 8140 | 45.00 | 12–28 | HALLBROOK | 660.00 |
| | HALLBROOK | 1,347.50 | 12–29 | 8140 | 65.00 |
| 12–19 | 8140 | 34.00 | 12–29 | HALLBROOK | 1,545.00 |
| | HALLBROOK | 1,502.50 | 12–30 | HALLBROOK | 1,405.00 |
| 12–20 | HALLBROOK | 1,127.50 | 12–31 | HALLBROOK | 2,578.69 |
| | | | | 119TH | 70.00 |
| | | | | **TOTAL** | **$24,117.69** |

### TOTAL VALUE OF SERVICES DEFENDANT RENDERED FOR JANUARY, 1987

| DATE | PROJECT | VALUE OF SERVICES | DATE | PROJECT | VALUE OF SERVICES |
|---|---|---|---|---|---|
| 01–02 | 8140 | $ 90.00 | 01–12 | 8140 | 305.00 |
| | HALLBROOK | 520.00 | | HALLBROOK | 40.00 |
| 01–03 | HALLBROOK | 150.00 | 01–13 | 8140 | 147.50 |
| 01–04 | 8140 | 45.00 | 01–14 | 8140 | 270.00 |
| 01–05 | HALLBROOK | 640.00 | 01–15 | 119TH | 80.00 |
| 01–06 | HALLBROOK | 650.00 | | 8140 | 142.50 |
| 01–07 | 8140 | 30.00 | 01–16 | 8140 | 22.50 |
| | HALLBROOK | 565.00 | 01–28 | 8140 | 70.00 |
| 01–08 | 8140 | 60.00 | 01–29 | 8140 | 45.00 |
| | HALLBROOK | 520.00 | 01–30 | 8140 | 70.00 |

| 01–09 | HALLBROOK | 520.00 | Gibbs | 8140 | | 260.00 |
|---|---|---|---|---|---|---|
| | | | | | TOTAL | $ 5,152.50 |

TOTAL VALUE OF SERVICES DEFENDANT
RENDERED DURING FEBRUARY, 1987

| 02–04 | 8140 | $ 45.00 | 02–11 | 8140 | 60.00 |
|---|---|---|---|---|---|
| 02–05 | 8140 | 100.00 | 02–12 | 8140 | 15.00 |
| | | | | TOTAL | $ 220.00 |

5. Continental was asked to perform services on these projects by authorized representatives of KBDC, and invoiced KBDC for the work performed. On the Hallbrook Project, Bill Textor and Don Jones of KBDC specifically asked Continental to perform services during the relevant period reflected above.

6. Continental stopped working on the Hallbrook project on January 10, 1987 and invoiced KBDC through that period.

7. At the conclusion of its work for KBDC on the Hallbrook project, Continental delivered first phase plans of the housing portion of the project to the City of Leawood, Kansas and KBDC.

8. Continental began working on the Hallbrook project again for Hallmark Farm Associates on or about January 22, 1987.

9. Until KBDC filed bankruptcy on February 13, 1987, Continental continued taking direction from KBDC on the non-Hallbrook projects referenced above, continued to provide reports to KBDC, and invoiced KBDC for work performed.

10. Neither KBDC nor any other Kroh entity paid Continental for any invoice for work performed set forth above.

11. A Mr. Privaterra eventually paid Continental money toward satisfaction of the invoices on the 119th and Metcalf project referenced above approximately one year after the December invoice. Mr. Privaterra did not make a claim against the KBDC estate for the amount paid to Continental and the bar date for claims against KBDC has passed.

12. Continental was eventually paid on the 8140 invoices by a non-Kroh entity.

13. Continental was eventually paid by Hallmark Farm for the amounts stated on the Hallbrook project invoices reflected above.

14. Pursuant to an Agreement of Settlement, Release and Rescission dated January 18, 1987, by and among Hallmark Farm Associates, Kroh Brothers Development Company, KBHF Associates, Limited Partnership, Kroh Golf Course Corporation, George P. Kroh and John A. Kroh, Jr., KBDC agreed to assign and transfer to Hallmark Farms Associates "all of their respective plans, drawings, documents, and other instruments or papers in anyway related to or concerned with the development and marketing of the Hall Farm...."

15. Pursuant to that agreement, Hallmark Farm Associates agreed to a full settlement and release of obligations due and owing KBDC and, consistent with the agreement, never filed a claim in the KBDC estate for any amounts subsequently paid Continental for the services.

16. The services provided by Continental to KBDC constituted the giving of new value to the estate in the sum of $29,490.19.

17. Subsequent payment of the referenced amounts by third parties did not cause a diminution of the bankruptcy estate.

18. The ultimate effect on the estate by the services provided by Continental to KBDC was that the estate sustained a benefit. The benefit was to KBDC and not to the third parties who ultimately paid Continental for the services.

19. The third parties who ultimately paid Continental for all or a portion of the new value services were neither secured

nor unsecured creditors of the estate and did not file Proofs of Claim, pursuant to their settlement agreement and release.

## II. CONCLUSIONS OF LAW

1. Plaintiffs are precluded by *res judicata* from challenging the value of the services rendered by Continental to KBDC. This court made specific findings of fact concerning the value of the services in its initial Memorandum Order entered July 28, 1989. Plaintiffs did not challenge those findings in the appeals to the District Court and Eighth Circuit Court of Appeals.

2. If a creditor receives payment from a third party for the services rendered for which the creditor seeks credit under 11 U.S.C. § 547(c)(4), and the third party has not made a secured claim against the estate by reason of the payment or otherwise acted to directly or indirectly diminish the estate, then the creditor is entitled to assert the new value defense and receive credit for the new value services.

3. The availability of the new value defense when a third party pays for the alleged new value services is dependent upon the ultimate effect of the payment on the estate.

4. The new value provided by Continental to KBDC by the engineering services replenished the estate, and KBDC was able to convey the result of the services to others in its settlement of the Hallbrook project. Payment to Continental by a third party (not the debtor) did not result in a preference which unfairly benefitted Continental since the third party did not make a claim, secured or otherwise, to assets of the estate by reason of the payment.

5. Continental is entitled to assert the new value defense under 11 U.S.C. § 547(c)(4) and is entitled to a credit thereunder in the amount of $29,490.19.