# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 12-3899
No. 12-4011

———————————————

In re: LGI Energy Solutions, Inc.; LGI Data Solutions Company, LLC

*Debtor*s

------------------------------

John R. Stoebner, Trustee

*Appellant/Cross-Appellee*

v.

San Diego Gas & Electric Company; Southern California Edison Company

*Appellees/Cross-Appellant*

———————————————

Appeals from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

——————————

Submitted: October 24, 2013
Filed: March 20, 2014

——————————

Before LOKEN, GRUENDER, and SHEPHERD, Circuit Judges.

——————————

LOKEN, Circuit Judge.

John Stoebner is the bankruptcy trustee for Chapter 7 debtors LGI Energy Solutions, Inc., and LGI Data Solutions Company, LLC (collectively, "LGI"). Prior to bankruptcy, LGI performed bill payment services for its clients, large utility customers such as the restaurant chains operated by Buffets, Inc., and Wendy's International, Inc. During the ninety days prior to bankruptcy, LGI made transfers totaling $75,053.85 to San Diego Gas & Electric Company ("SDGE") and transfers totaling $183,512.74 to Southern California Edison Company ("SCE") to pay outstanding invoices for utility services provided to Buffets and Wendy's restaurants. Stoebner sued to recover these payments as avoidable preferences under § 547(b) of the Bankruptcy Code, 11 U.S.C. § 547(b). SDGE and SCE asserted the subsequent new value exception to preference liability found in § 547(c)(4).

In separate decisions, the bankruptcy court upheld the exceptions in part, allowing each utility to offset payments received by LGI from the utility customers, Buffets and Wendy's, for utility services provided after a preference payment. In re LGI Energy Solutions, Inc., Nos. ADV 11-4065 and 11-4066 (Bankr. D. Minn. June 11, 2012). Consolidating the cases and reversing the bankruptcy court in part, the Eighth Circuit Bankruptcy Appellate Panel ("BAP") allowed each utility a larger offset for all payments by Buffets and Wendy's made after a preference payment, including payments for utility services performed before the preference payment. Applying this standard, the BAP reduced SDGE's preference liability from $31,242.63 to zero and SCE's preference liability from $131,267.63 to $25,625.75. In re LGI Energy Solutions, Inc., 482 B.R. 809, 819-20 (8th Cir. BAP 2012). Trustee Stoebner appeals, raising a § 547(c)(4) issue of first impression. SCE cross-appeals, arguing the BAP made a clerical error in calculating SCE's preference liability, an argument the trustee does not contest. We affirm the BAP's decision but reduce SCE's preference liability in the amount its cross appeal requested.

**I.**

As provided in contracts between LGI and its utility customer clients, utilities providing services to a utility customer sent customer invoices to LGI, rather than to the customer. LGI periodically sent the customer a spreadsheet summarizing its payment obligations under invoices LGI had received from the utilities serving that customer. The customer then sent a check payable to LGI for the aggregate amount due. LGI deposited the customer's payment into its own commingled bank accounts and then sent checks drawn on its accounts to the utility companies to pay their customer invoices. The utilities had no separate contracts with LGI; they received payments from LGI by reason of LGI's contractual obligations to utility customers. See In re LGI Energy Solutions, Inc., 460 B.R. 720, 722-24 (8th Cir. BAP 2011).

The preferential transfers at issue were payments made by LGI to SDGE and SCE over a three-week period in November 2008 for utility services previously invoiced to Buffets and to Wendy's. After these transfers, but during the ninety-days prior to the filing of involuntary Chapter 7 petitions on February 6, 2009, the utilities continued to provide services to Buffets and Wendy's and sent new invoices to LGI; LGI continued to send invoice spreadsheets to Buffets and Wendy's, who sent checks totaling some $297,000 to LGI for the payment of these invoices. LGI, now in financial trouble, passed none of this new money on to SDGE or SCE. These post-preference customer payments are the "subsequent new value" here at issue. LGI ceased operating as a going concern on December 10, 2008.

**II.**

"In general, an avoidable preference is a transfer of the debtor's property, to or for the benefit of a creditor, on account of the debtor's antecedent debt, made less than ninety days before bankruptcy while the debtor is insolvent, that enables the creditor to receive more than it would in a Chapter 7 liquidation. *See* § 547(b). If a

transfer is avoidable under § 547(b), the creditor may escape preference liability by proving that it falls within one of the exceptions set forth in § 547(c)." In re Jones Truck Lines, Inc., 130 F.3d 323, 326 (8th Cir. 1997). The subsequent new value exception in § 547(c)(4) provides that the trustee may not avoid a transfer "to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor."[1] These preference rules are intended to discourage creditors from dismembering a debtor that is sliding into bankruptcy, to encourage creditors to work with troubled businesses, and to further "the prime bankruptcy policy of equality of distribution among creditors." Jones Truck Lines, Inc. v. Full Serv. Leasing Corp., 83 F.3d 253, 257 & n.3 (8th Cir. 1996) (quoting the statute's legislative history). We review the interpretation of the statute *de novo*. See In re Kolich, 328 F.3d 406, 408 (8th Cir. 2003).

LGI made the preferential transfers at issue to satisfy its antecedent obligations to utility customers Buffets and Wendy's to pay outstanding utility invoices. The transfers were "for the benefit of" these utility-customer creditors because the transfers satisfied their debts to the utilities. Cf. Wolff v. United States, 372 B.R. 244, 252 (D. Md. 2007), rev'd on other grounds sub. nom., In re FirstPay Inc., 391 F. App'x 259 (4th Cir. 2010). An obvious question is, why did the trustee not sue the utility-customer creditors who were the primary beneficiaries of the preferential transfers? See 11 U.S.C. § 550(a)(1). The obvious answer is that the trustee knew the utility customers would assert a § 547(c)(4) exception for their substantial post-

---

[1]§ 547(c)(4) further provides that the exception applies only if the new value is "(A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." See In re Tenn. Valley Steel Corp., 201 B.R. 927, 939 (Bankr. E.D. Tenn. 1996). In this case, the parties stipulated that LGI made no transfers to Buffets, Wendy's, SDGE, or SCE on account of the payments that are alleged to have given LGI subsequent new value, and that these creditors have not asserted a security interest in those payments.

preference transfers to LGI, transfers that satisfied "the relevant inquiry" under § 547(c)(4) -- "whether the new value replenishes the [bankruptcy] estate." In re Kroh Bros. Dev. Co., 930 F.2d 648, 652 (8th Cir. 1991).

Instead of suing the primary creditor beneficiaries, the trustee set out to avoid the § 547(c)(4) exception by suing the utilities, the immediate transferees of the preferential transfers. At the outset, it is essential to note that this approach does fundamental violence to "the prime bankruptcy policy of equality of distribution among creditors." If the utilities must return the preferential transfers to the bankruptcy estate, the estate is "doubly replenished" entirely at the expense of only two creditors, Buffets and Wendy's, who got no benefit for their subsequent new value and will continue to be liable to the utilities for their unpaid invoices.[2] The question remains, is this inequitable result mandated by the statute?

The first hurdle the trustee must clear to establish his inequitable theory is that the defendant utilities were "creditors" of LGI who received a transfer or its benefit within the meaning of § 547(b)(1), despite the absence of any direct contractual relationship with LGI. The bankruptcy court, defining the term broadly, concluded that the utilities were creditors under third party and trust beneficiary principles. The BAP agreed, and the utilities do not challenge this ruling on appeal. As the ruling opened the door for the trustee's inequitable application of the preference statutes, it seems open to serious question. The issue is not before us, so we do not consider it. But this part of the BAP decision should *not* be considered Eighth Circuit precedent.

---

[2]Buffets and Wendy's filed proofs of claim in the LGI bankruptcy for payments made to utility providers for invoices already paid to LGI. If the trustee succeeds in avoiding the preferential transfers here at issue, the claims of Buffets and Wendy's would obviously increase but would only be paid *pro rata* with the claims of all the other LGI creditors who would benefit from the estate being doubly replenished.

The lynchpin of the trustee's theory is his assertion that, because § 547(c)(4) limits the subsequent new value exception to new value "such creditor" gave to or for the benefit of LGI, only subsequent new value given by the utilities, not by the utility customers, may offset *the utilities'* preference liability. The bankruptcy court agreed and therefore limited the utilities' offsets to the value of post-transfer utility services *they* provided.[3] Relying primarily on Jones Truck Lines, the BAP disagreed:

> *Jones Truck Lines* can be harmonized with the [reference to "such creditor" in § 547(c)(4)] by interpreting it as a recognition that in tripartite relationships where the [preferential] transfer to a third party [here, the utility] benefits the primary creditor [here, the utility customer], new value can come from that [primary] creditor, even if the third party is a creditor in its own right.

## III.

In attacking the BAP's interpretation of the statute on appeal, the trustee (like the bankruptcy court) relies almost exclusively on In re Musicland Holding Corp., 462 B.R. 66 (Bankr. S.D.N.Y. 2011), to support his textual argument that "such creditor" must *in all circumstances* be construed as limiting subsequent new value to that personally provided by the creditor the trustee elects to sue to recover the preferential transfer. Musicland of course is not binding precedent, but more importantly, it does not support the trustee's categorical interpretation of "such creditor" in § 547(c)(4). In Musicland, the bankruptcy court denied the preference defendant's claim of an offset for subsequent new value provided by another creditor *who neither received nor benefitted from the preferential transfer*. See id. at 68-69, 73-74. Thus, Musicland stands only for the proposition that a preferred creditor

---

[3]Section 547(a)(2) defines "new value" to include "money or money's worth in goods, services, or new credit." Like the employee services in Jones Truck Lines, 130 F.3d at 327, utility services can be new value. See Tenn. Valley Steel Corp., 201 B.R. at 939.

cannot offset subsequent new value provided by a *non*-preferred creditor. In this case, *both* the utility customers *and* the utilities benefitted from LGI's preferential transfers to the utilities.

As the BAP concluded, our decision in Jones Truck Lines, if not controlling, is persuasive authority contradicting the trustee's inequitable interpretation of the term "such creditor" in § 547(c)(4). In Jones Truck Lines, the Chapter 11 debtor sued to recover as avoidable preferences employee benefit contributions the debtor paid during the pre-bankruptcy preference period to third-party employee benefit funds pursuant to a collective bargaining agreement. The defendant funds claimed the protection of the two distinct exceptions found in § 547(c)(1) and § 547(c)(4).[4] The bankruptcy court and the district court ruled in favor of the debtor because the benefit funds did not provide new value "directly to the debtor." Focusing primarily on the § 547(c)(1) exception, we reversed, concluding that this approach to new value focused on the wrong creditor and disregarded the reality of the parties' relationship:

> The flaw in the district court's analysis was its search for new value flowing from [the benefit funds] to Jones. . . . The "new value" Jones received for paying current wages and benefit contributions during the ninety-day preference period were the services its employees continued to provide.

130 F.3d at 327. In these circumstances, we concluded that "a transfer of new value by a third party to the debtor may satisfy the 'new value' requirement of" the contemporaneous new value exception. Id. Although this ruling appeared to resolve

---

[4]Because timing is essential in determining preference liability, § 547(c) has three distinct exceptions that "share common goals," Kroh Bros., 930 F.2d at 651 n.3: § 547(c)(1) excepts contemporaneous exchanges for new value; § 547(c)(2) excepts payments in the ordinary course of business, even if the debtor's payment lagged the creditor's performance; and § 547(c)(4) excepts payments for antecedent debts to the extent subsequent new value was given.

the funds' preference liability, we went on to address the related new value issue under § 547(c)(4):

> If Jones received no contemporaneous new value for the weekly payments [to the benefit funds], then it necessarily received subsequent new value for each payment (except the last one) because its employees continued working.

Id. at 328. In other words, we concluded that transfers the debtor made to the benefit funds to satisfy its obligations to pay employee pension and welfare benefits, if otherwise preferential, were excepted from preference liability to the extent the *employees* provided the debtor post-transfer new value by working. This is directly contrary to the trustee's contention that the reference to "such creditor" in § 547(c)(4) means that only new value provided by the preference defendant may offset its § 547 preference liability. Though there are not many reported decisions addressing the issue, other courts have rejected the trustee's restrictive interpretation of the term "such creditor" in similar three-party transactions. See In re H&S Transp. Co., 939 F.2d 355, 358-60 (6th Cir. 1991) (boat owner as subrogee can assert fuel suppliers' new value to maritime transport debtor); accord In re Fuel Oil Supply & Terminaling, Inc., 837 F.2d 224, 231 (5th Cir. 1988) ("under these circumstances, new value received by a debtor need not be provided by the creditor to whom the [preferential] transfer was made but may be provided by the fully secured third party").

Because the debtor's preferential transfers to the benefit funds in Jones Truck Lines were based upon the debtor's contractual obligations to its employees, who benefitted from those transfers, we counted the employees' labor, rather than the funds' fringe benefits, as the new value for § 547(c) purposes. This case is closely analogous. LGI's preferential transfers to the utilities were based upon its contractual obligations to the utility customers, who benefitted from those transfers by having their utility bills paid. Applying the reasoning in Jones Truck Lines, each utility may offset all new value Buffets and Wendy's transferred to LGI subsequent to an

avoidable preference if the transfer of new value satisfied the conditions in § 547(c)(4)(A) and (B).

In addition to avoiding the inequitable treatment of utility-customer creditors that would result from adopting the trustee's theory, the BAP's interpretation of § 547(c)(4) is consistent with the statutory purpose of "encourag[ing] creditors to deal with troubled businesses." Kroh Bros., 930 F.2d at 651. Either the utilities or the utility customers could have stopped using LGI as a bill-paying middleman at any time. The utility customers continued to make utility bill payments to LGI after the preferential transfers -- the subsequent new value at issue -- because the utilities and the customers continued to deal with a troubled business, not because the utilities continued to provide utility services to their customers.

For these reasons, we conclude that the BAP resolved an issue not clearly addressed by the text of § 547(b) and (c) in a manner that is consistent with the statute's purposes. Our decision is limited to the circumstances presented by this case, for the statute is complex. We hold that, in three-party relationships where the debtor's preferential transfer to a third party benefits the debtor's primary creditor, new value (either contemporaneous or subsequent) can come from the primary creditor, even if the third party is a creditor in its own right and is the only defendant against whom the debtor has asserted a claim of preference liability. As § 547(b) makes avoidable a transfer "for the benefit of a creditor," it both serves the purposes of § 547 and honors the statute's text to construe "such creditor" in the § 547(c)(4) exception as including a creditor who benefitted from the preferential transfer and subsequently replenished the bankruptcy estate with new value. Therefore, the BAP correctly concluded that SDGE and SCE may each offset subsequent new value that Buffets or Wendy's paid to LGI for that utility's services, regardless of when those services were provided.

**IV.**

In its cross-appeal, SCE contends the BAP, in calculating SCE's preference liability for payments made on behalf of Buffets, erroneously counted two preference payments of $4,178.52 and $4,224.86 that LGI made on behalf of Wendy's. The trustee agrees, and after careful review of the record, so do we. The table in the BAP's opinion reflecting the calculation of SCE's preference liability includes these two payments in both the "SCE - Wendy's New Value Analysis" and the "SCE - Buffets New Value Analysis." But the record reflects only two LGI payments in these amounts on behalf of Wendy's. The BAP's opinion correctly states that LGI made 22 transfers to SCE on behalf of Buffets, but its table includes 24 transfers.

The double-counting of these two payments appears to be an inadvertent clerical error, understandable in a case involving a large number of transactions and multiple parties. But the error wrongly inflated SCE's preference liability because preferential transfers on behalf of Wendy's cannot increase SCE's preference liability for transfers on behalf of Buffets. Therefore, we direct the BAP to enter a modified judgment reducing SCE's preference liability to $17,222.37. The judgment of the BAP is otherwise affirmed.

————————————————